DAVID T. HAYEK (SBN 144116)
dhayek@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
350 South Grand Avenue, Suite 3600
Los Angeles, CA 90071-3476
Telephone: 213-680-2800
Facsimile: 213-614-7399

JOHN DeLASCIO (*Pro Hac Vice*)
jdelascio@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001

Attorneys for Plaintiffs
REGENT INSURANCE COMPANY and
GENERAL CASUALTY COMPANY OF WISCONSIN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGENT INSURANCE COMPANY, a Wisconsin Corporation; GENERAL CASUALTY COMPANY OF WISCONSIN, a Wisconsin Corporation, | Case No.: 2:25-cv-04142-HDV (AJRx) |
| | **FIRST AMENDED COMPLAINT** |
| Plaintiff, | |
| vs. | District Judge Hernan D. Vera |
| CAMBRIA ENTERPRISES, an entity of unknown form/domicile; CAMBRIA ENTERPRISES LLC; a Minnesota Limited Liability Company; CAMBRIA COMPANY LLC; a Minnesota Limited Liability Company and DOES 1-50 inclusive, | Magistrate Judge A. Joel Richlin |
| Defendants. | |

Comes now for their First Amended Complaint, Plaintiffs REGENT INSURANCE COMPANY and GENERAL CASUALTY COMPANY OF WISCONSIN (collectively "Plaintiffs") and allege:

///

1

## NATURE OF ACTION

1. Plaintiffs bring this action pursuant to 28 U.S.C. §§ 1332, 2201, and 2202 for declaratory judgment regarding the parties rights and obligations in connection with written commercial general liability policies, both primary and/or umbrella/excess, issued by one or both Plaintiffs in successive years from November 1, 2005 to March 1, 2014 (the "Policies") to named insured Defendant CAMBRIA ENTERPRISES, an entity of unknown form/domicile. At various times between 2005 and 2014, the Policies also included as named insureds CAMBRIA ENTERPRISES LLC; a Minnesota Limited Liability Company; CAMBRIA COMPANY, LLC., a Minnesota Limited Liability Company, and DOES 1-50 (collectively "Defendants"). Defendants have been or may be sued in California by a number of individuals, estates, and/or trusts which seek damages against Defendants for alleged illness, injuries and, in some cases, deaths of individuals, and damages arising from the alleged use of products designed, manufactured, marketed, and sold by Defendants due to alleged hazardous materials contained in those products ("California Silica Lawsuits"). The injuries and damages alleged in the California Silica Lawsuits are alleged to have been principally caused by the inhalation or ingestion of silica dust and/or silica dust mixed with other materials. A true and correct copy of the case names, numbers, and venues of each of the California Silica Lawsuits filed as of the time of the filing of the instant Complaint is attached hereto as **Exhibit 1**. It is anticipated that additional lawsuits will be filed alleging the same general facts and circumstances as alleged in those actions described in **Exhibit 1**. Plaintiffs will disclose the identifying information of these later-filed actions by providing an updated **Exhibit 1** from time to time in this action.

2. Defendants tendered the California Silica Lawsuits to Plaintiffs under the Policies for defense and/or indemnity coverage.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28

2

U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interests.

4.      This Court has personal jurisdiction over each of the Defendants in this matter.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims at issue in this action occurred in this District.

6.      An actual controversy within the meaning of 28 U.S.C. §2201 exists between the parties in that Plaintiffs contend there is no coverage under any of the Policies issued by Plaintiffs to Defendants for the claims asserted in the California Silica Lawsuits, while Defendants contend there is coverage under those Policies.

7.      Further, Plaintiffs contend that, because there is no coverage afforded by their Policies, there is no duty to provide a defense to Defendants against the claims asserted in the California Silica Lawsuits.  Defendants contend the opposite – that there is a potential for coverage under the Policies and as to the primary Policies there is an immediate duty to defend Defendants against the claims asserted in the California Silica Lawsuits.

**PARTIES**

8.      Plaintiff REGENT INSURANCE COMPANY is a corporation organized under the laws of Wisconsin, with its principal place of business in New York.

9.      Plaintiff GENERAL CASUALTY COMPANY OF WISCONSIN is a corporation organized under the laws of Wisconsin, with its principal place of business in New York.

10.      Defendant CAMBRIA ENTERPRISES is an entity of unknown form and domicile.  It is identified as a named insured on the Policies.  Plaintiffs are informed and believe, and thereon allege, that this defendant is, or may be, named in California Silica Lawsuits which are currently pending or which may be filed in the future.

FIRST AMENDED COMPLAINT

Plaintiffs are further informed and believe, and thereon allege, that this defendant currently asserts or will assert that it is entitled to benefits under one or more of the Policies, including provision of a defense against one or more California Silica Lawsuits and/or for indemnification of damages awarded against it in one or more California Silica Lawsuits.

11.    Plaintiffs are informed and believe and thereon allege that CAMBRIA ENTERPRISES LLC is a Minnesota Limited Liability Company and all of its members are citizens of Minnesota. It is identified as a named insured on the Policies. Plaintiffs are informed and believe and thereon allege that this defendant is or may be named in California Silica Lawsuits which are currently pending or which may be filed in the future.  Plaintiffs are further informed and believe and thereon allege that this defendant currently asserts or will assert that it is entitled to benefits under one or more of the Policies, including provision of a defense against one or more California Silica Lawsuits and/or for indemnification of damages awarded against it in one or more California Silica Lawsuits.

12.    Plaintiffs are informed and believe and thereon allege that CAMBRIA COMPANY LLC is a Minnesota Limited Liability Company and all of its members are citizens of Minnesota. "Cambria Company" is identified as a named insured on the Policies.  Plaintiffs are informed and believe and thereon allege that this defendant is or may be named in California Silica Lawsuits which are currently pending or which may be filed in the future.  Plaintiffs are further informed and believe and thereon allege that this defendant currently asserts or will assert that it is entitled to benefits under one or more of the Policies including provision of a defense against one or more California Silica Lawsuits and/or for indemnification of damages awarded against it in one or more California Silica Lawsuits.

13.    Plaintiffs are informed and believe and thereon allege that all Defendants named herein were and/or are the manufacturers, distributors, suppliers, sellers, importers, brokers, and/or contractors of industrial stone products or otherwise

participated in some fashion in placing these products into the stream of commerce, including within the State of California.   All Defendants were named as insureds in one or more of the Policies and are therefore named herein to allow this Court to afford complete relief to all parties to the insurance contracts at issue herein.

### FACTUAL ALLEGATIONS

**A.    The Insurance Policies At Issue**

14.    Plaintiffs issued the following Policies to one or more Defendants:

| Insurer | Policy Start | Policy Type | Policy | Limit |
|---|---|---|---|---|
| Regent Insurance Company | 11/1/2005 to 11/1/2006 | General Liability/ Package | CCI0399958 | $1M/$1M |
| General Casualty Company of Wisconsin | 11/1/2005 to 11/1/2006 | Umbrella/Excess | CCU039958 | $10M |
| Regent Insurance Company | 11/1/2006 to 11/1/2007 | General Liability/ Package | CCI0399958 | $1M/$1M |
| General Casualty Company of Wisconsin | 11/1/2006 to 11/1/2007 | Umbrella/Excess | CCU039958 | $10M |
| Regent Insurance Company | 11/1/2007 to 11/1/2008 | General Liability/ Package | CCI0399958 | $1M/$1M |
| General Casualty Company of Wisconsin | 11/1/2007 to 11/1/2008 | Umbrella/Excess | CCU039958 | $10M |
| Regent Insurance Company | 11/1/2008 to 11/1/2009 | General Liability/ Package | CCI0399958 | $1M/$1M |
| General Casualty Company of Wisconsin | 11/1/2008 to 11/1/2009 | Umbrella/Excess | CCU039958 | $10M |
| Regent Insurance Company | 11/1/2009 to 11/1/2010 | General Liability/ Package | CCI0399958 | $1M/$1M |
| General Casualty Company of Wisconsin | 11/1/2009 to 11/1/2010 | Umbrella/Excess | CCU039958 | $10M |
| Regent Insurance Company | 11/1/2010 to 11/1/2011 | General Liability/ Package | CCI0399958 | $1M/$1M |
| General Casualty Company of Wisconsin | 11/1/2010 to 11/1/2011 | Umbrella/Excess | CCU039958 | $10M |

FIRST AMENDED COMPLAINT

| Regent Insurance Company | 12/31/2010 to 12/31/2011 | General Liability/ Package | CCI0399958 | $1M/$1M |
|---|---|---|---|---|
| General Casualty Company of Wisconsin | 12/31/2010 to 12/31/2011 | Umbrella/Excess | CCU039958 | $10M |
| Regent Insurance Company | 12/31/2011 to 12/31/2012 | General Liability/ Package | CCI0399958 | $1M/$1M |
| General Casualty Company of Wisconsin | 12/31/2011 to 12/31/2012 | Umbrella/Excess | CCU039958 | $10M |
| Regent Insurance Company | 12/31/2012 to 3/1/2013 | General Liability/ Package | CCI0399958 | $1M/$1M |
| General Casualty Company of Wisconsin | 12/31/2012 to 3/1/2013 | Umbrella/Excess | CCU039958 | $10M |
| Regent Insurance Company | 3/1/2013 to 3/1/2014 | General Liability/ Package | CCI0399958 | $1M/$1M |
| General Casualty Company of Wisconsin | 3/1/2013 to 3/1/2014 | Umbrella/Excess | CCU039958 | $10M |

15.     True and correct copies of the above-referenced Policies are attached hereto as **Exhibits 2** through **21**.

16.     The most significant provisions of the primary and excess Policies identified above are set forth, *in haec verba*, below.

17.     Each of the Regent Insurance Company primary Policies issued to Defendants were issued with Commercial General Liability Coverage forms CG 00011001, CG 0011204, and CG 00011207. The Commercial General Liability forms contain the same or similar language regarding the insuring agreement as provided below:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)**   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)**   Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   **b.**    This insurance applies to "bodily injury" and "property damage" only if:

    **(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **(2)**   The "bodily injury" or "property damage" occurs during the policy period.

18.   Each of the primary Policies includes same or similar language regarding relevant definitions applied to various policy terms.  These definitions include:

FIRST AMENDED COMPLAINT

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish, injury or illness or emotional distress and/or death resulting from any of these at any time.

* * *

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**18.**    "Suit" means a civil proceeding in which damages because of bodily injury, property damage or personal and advertising injury to which this insurance applies are alleged. "Suit" includes:

**a.**    an arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.**    any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19.    Each of the primary Policies includes a Silica or Silica-Related Dust Exclusion endorsement which provides, in part:

**SILICA OR SILICA-RELATED DUST EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**    The following exclusion is added to **Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2.    Exclusions**

This insurance does not apply to:

FIRST AMENDED COMPLAINT

Silica Or Silica-Related Dust

    **a.**    "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

    **b.**    "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

    **c.**    Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.**    The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**2.**    **Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

    **a.**    "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

    **b.**    Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the

9

effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

C.    The following definitions are added to the Definitions Section:

    **1.**    "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

    **2.**    "Silica-related dust" means a mixture or combination of silica and other dust or particles.

20.    Each of the primary Policies also includes an exclusion for "expected or intended injury" which provides:

    **2.**    **Exclusions**

    This insurance does not apply to:

        **a.**    **Expected Or Intended Injury**

        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

21.    Each of the primary Policies is also subject to a Pollution exclusion that excludes coverage for:

    **f. Pollution**

    **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

        **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

FIRST AMENDED COMPLAINT

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the

11

escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

\*       \*       \*

22.    Each of the umbrella/excess Policies were issued with Commercial

12

General Liability Coverage Form CU 00011204 providing the following insuring agreement:

**SECTION I — COVERAGES**

**1. Insuring Agreements**

**Coverage A. — Bodily Injury and Property Damage Liability**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

          No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **2. Defense, Settlement and Supplementary Payments**.

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence".

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period.

        **(3)**    Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy

13

period will be deemed to have been known prior to the policy period.

The "occurrence" may take place anywhere in the world.

23.     Each of the umbrella/excess Policies include same or similar language regarding relevant definitions applied to various policy terms.   These definitions include:

**4.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death, disability, mental injury, mental anguish or shock resulting from any of these at any time.

\*     \*     \*

**14.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*     \*     \*

**19.**     "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.**     An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.**     Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

\*     \*     \*

24.     Each of the umbrella/excess Policies includes a Silica or Silica-Related Dust Exclusion endorsement which provides, in part:

**A.**     The following exclusion is added to **Paragraph 3. Exclusions of**

14

**SECTION I — COVERAGES:**

**3.    Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**(1)**    Any liability of the insured arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**(2)**    Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.**    The following definition is added to **SECTION V — DEFINITIONS:**

"Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds. "Silica-related dust" means a mixture or combination of silica and other dust or particles."

25.    In addition, each of the umbrella/excess Policies includes an exclusion for expected or intended injuries which provides:

**2.    Exclusions**

This insurance does not apply to:

**a.    Expected Or Intended Injury**

15

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

26.    Each of the umbrella/excess Policies is also subject to certain Total Pollution exclusions, including, but not limited to, the following representative exclusion contained in an endorsement to the umbrella/excess Policies:

**TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Exclusion i. under Paragraph 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

    i.    Pollution

        (1)    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

        (a)    "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for

16

per¬ sonal use, by the building's occupants or their guests; or

(b)      "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(i)      At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(ii)      At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

For the purposes of this insurance, hos¬ tile fire means one that becomes uncontrollable or breaks out from where it is intended to be.

(2)      "Pollution cost or expense".

27.    All of the Policies contain other exclusions which eliminate or limit the coverage afforded by the Policies for the California Silica Lawsuits.

28.    With one exception, upon tender of the various claims asserted in the California Silica Lawsuits for defense and/or indemnity, Plaintiffs have declined coverage based on the terms, conditions, limitations, and exclusions in their respective policies.

29.    That lone exception is the California Silica Lawsuit styled *Cesar Manuel Gonzalez Quiroz v. American Marble & Onyx Company, Inc.*, *et al*, Los Angeles

County Superior Court Case No. 24STCV01477 (the "*Gonzalez Quiroz* Action"). In that case, Regent Insurance Company initially denied coverage, but made a business decision to provide a defense to the Defendants named in that action pursuant to a full reservation of rights in that one lawsuit, where no other insurer had agreed to provide a defense, even though Regent Insurance Company believes there is no potential for coverage under the Policies it issued to Defendants relevant to that action.

### B.    The California Silica Lawsuits

30.    One or more of the Defendants herein are named in over 150 California Silica Lawsuits which allege the same or similar factual circumstances. A spreadsheet identifying each of the California Silica Lawsuits pending as of April 22, 2025 is hereto attached as **Exhibit 1**. Several new lawsuits asserting the same allegations and claims against Cambria are filed each week.

31.    The Gonzalez Quiroz Action is representative of the claims and allegations asserted in the other California Silica Lawsuits. A true and correct copy of the Third Amended Complaint in the Gonzalez Quiroz Action is attached hereto as **Exhibit 22** ("3AC") and incorporated herein.

32.    In the 3AC, Gonzalez Quiroz alleges, *inter alia*:

[3AC] 93. All stone products contain crystalline silica in varying concentrations from the lowest concentration of about 3-5% in marble to about 93-95% in traditional artificial stone.

94. Stone slabs or blocks are commercial products that require fabrication prior to installation for a consumer.

95. Cutting, grinding, drilling, chipping, edging, and/or polishing (collectively "fabricating") stone products produces large amounts of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic silicosis as well as lung cancer and various other silica-related diseases.

FIRST AMENDED COMPLAINT

96. Fabrication workers who cut, grind, drill, chip, edge, and/or polish artificial stone products are not only exposed to high concentrations of respirable crystalline silica, but are also exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders.

97. In addition to crystalline silica, pulmonary fibrosis (scarring of the lung tissue) is caused by many metals that are constituents of artificial stone, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium. Some of these metals also cause an immunologic lung disease called hypersensitivity pneumonitis characterized by granulomas in lung tissue that also causes pulmonary fibrosis.

(**Exhibit 22**, p. 31-32.)

33.    The 3AC also alleges that:

[3AC] 99. Workers fabricating artificial stone products often develop progressive massive fibrosis due to high concentrations of crystalline silica and other toxic constituents of artificial stone.

100.    The defendants named herein were and/or are the manufacturers, distributors, suppliers, sellers, importers, brokers, and/or contractors of industrial stone products. As stated above, these industrial stone products include "stone products," "stone slabs," "stone block," "artificial stone," "natural stone," "silica-containing stone," "treated natural stone," which, after being fabricated and installed in consumers' homes and businesses would become "kitchen countertops," "bathroom countertops," and/or "stone countertops," at which time and only then would they become consumer products. Pursuant to *Bockrath v. Aldrich*

19

*Chemical Co.* (1999) 21 Cal.4th 71, these stone products, including all the definitions and variants thereof, as alleged above, are the products that caused Plaintiff's injuries and occupational disease.

\*     \*     \*

105. While not required by *Bockrath*, in addition to the above terms for the defendants' stone products, the following is a list further specifying the named Defendants' stone products at issue in this case, named as they are named and/or marketed in the industry including by the defendants themselves, which Plaintiff cut, drilled, polished, fabricated and/or installed and to which he was injuriously exposed in his work as a cutter, fabricator, and installer:

\*     \*     \*

CAMBRIA COMPANY LLC

Engineered Stone

Quartz

Cambria Quartz Surfaces

(**Exhibit 22**, p. 32-34, 39.)

34.    The 3AC further alleges:

[3AC] 482. On January 5, 2001, Cambria issued a Material Safety Data Sheet for a product that it identified as "Quartz Surfaces." In Section II of this document Cambria provided false and misleading information by identifying the product as a "Non Hazardous- Quartz Surfacing Product" and by stating that "exposure limits may be applicable . . . when cutting or grinding of the product is performed" because of its crystalline silica

FIRST AMENDED COMPLAINT

(quartz) content. The latter statement is false and misleading, because exposure limits for crystalline silica *always apply* when it is cut or ground.

483. Section VI of Cambria's January 5, 2001 Material Safety Data Sheet, regarding Health Hazards, began with the misleading statements that "this product is not hazardous as shipped," and that "grinding and cutting may generate dust containing crystalline silica." The former statement is misleading because the product is extremely hazardous when used as intended; the latter statement is false and misleading, because dust containing crystalline silica is *always generated* when the material is ground or cut. This section states that "continued overexposure to respirable crystalline silica can cause silicosis, a chronic and progressively debilitating disease, created by the silica-containing scar tissue which forms in the lungs." This statement is also false and misleading, because it indicates that only "continued overexposure" to respirable crystalline silica can cause silicosis, even though exposure to crystalline silica within occupational exposure limits (which is not an "overexposure") likewise causes silicosis. In this section of the Material Safety Data Sheet, Cambria also misrepresented the carcinogenicity of the product by stating that "this product is not considered to be a carcinogen as shipped, only when dust containing crystalline silica is produced." This statement is false, because the product is almost 100% crystalline silica and is therefore, by definition, carcinogenic to humans, the risk of harm depending on the nature and extent of exposure.

(**Exhibit 22**, p. 173-74 (emphasis in original).)

35.    The 3AC also alleges:

[3AC] 106. From about 2008 to 2009, Plaintiff, CESAR MANUEL GONZALEZ QUIROZ, worked as a laborer at the Bernardino Sanchez fabrication shop on Arroyo Street in San Fernando, California, during which period he inhaled silica-containing dust from Defendants' stone products.

107. From about 2009 to 2015, Plaintiff, CESAR MANUEL GONZALEZ QUIROZ, worked as a cutter at the Bernardino Sanchez fabrication shop on Arroyo Street in San Fernando, California, during which period he inhaled silica-containing dust from Defendants' stone products.

108. From about 2015 to 2021, Plaintiff, CESAR MANUEL GONZALEZ QUIROZ, worked as a cutter at the Bernardino Sanchez fabrication shop on First Street in San Fernando, California, during which period he inhaled silica-containing dust from Defendants' stone products.

109. From about 2022 to mid-December 2023, Plaintiff, CESAR MANUEL GONZALEZ QUIROZ, worked as a cutter at 3 Bro Marble, located at 4547 W. 154th Street, Lawndale, CA 90260, during which period he inhaled silica-containing dust from Defendants' stone products.

110. From about 2008 to mid-December 2023, Plaintiff, CESAR MANUEL GONZALEZ QUIROZ, cut, ground, drilled, edged, polished, fabricated and/or installed Defendants' artificial stone and natural stone products to become countertops in kitchens and bathrooms. Plaintiff is informed and believes and thereon alleges that the injuries from which he suffers that are the subject of this action, were sustained in the course of his work in Los Angeles County, California, cutting, fabricating, and/or installing stone products.

111. Throughout the course of his work, Plaintiff, CESAR MANUEL GONZALEZ QUIROZ, worked with inherently hazardous

stone products manufactured, imported, supplied, distributed, contracted, and/or brokered, by the named Defendants and Does 1-100. Plaintiff, CESAR MANUEL GONZALEZ QUIROZ, was thereby exposed to and inhaled stone dust containing silica and other toxins and carcinogens ….

112. As a direct and proximate result of his exposure to silica, metals and other toxins within said stone products manufactured, distributed, supplied, contracted, and/or brokered by Defendants, Plaintiff, CESAR MANUEL GONZALEZ QUIROZ, developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma).

113. As a direct and proximate result of his exposure to silica, metals and other toxins within said stone products manufactured, distributed, supplied, contracted, and/or brokered by Defendants, Plaintiff, CESAR MANUEL GONZALEZ QUIROZ, has had to receive substantial medical treatment, including hospitalizations and he will require surgeries, including a lung biopsy and lung transplantation.

(**Exhibit 22**, p. 56-57.)

36.    Finally, the 3AC also alleges Gonzalez Quiroz suffered damages and other harm as a result of his exposure to silica and silica-related dust.  For example:

[3AC] 1309. As a direct and proximate result of the conduct or omissions of the defendants, as aforesaid, plaintiff's exposure caused severe and permanent injury, damage, loss, or harm to the plaintiff, all to his general damage in a sum in excess of the jurisdictional limits of a limited civil

FIRST AMENDED COMPLAINT

case.

(**Exhibit 22**, p. 449.)

### C. **The Tender Of The Silica Lawsuits**

37.     Each of the Silica Lawsuits listed in **Exhibit 1** have been tendered by one or more Defendants to Regent Insurance Company and/or General Casualty Company of Wisconsin for coverage. Plaintiffs declined coverage and Regent Insurance Company declined to defend the California Silica Lawsuits based on, among other terms, conditions, exclusions and definitions, the Silica Or Silica-Related Dust Exclusion included as part of each of Plaintiff's Policies issued to Defendants, with the exception of the *Gonzalez Quiroz* Action which, because of circumstances unique to that Action, Plaintiff Regent Insurance Company made a business decision to provide a defense for Cambria Company LLC. This defense was provided subject to a full and complete reservation of rights under its Policies, at law and in equity, including the right to withdraw from the defense of Cambria Company LLC, the right to file an action for declaratory relief and/or to seek reimbursement from Cambria Company LLC for any sums Regent Insurance Company paid or may pay for legal expense on behalf of Cambria Company LLC in the *Gonzalez Quiroz* Action for claims which had/have no potential for coverage under the Regent Insurance Company Policies and/or withdraw coverage and seek reimbursement pursuant to the Insuring Agreement, the Silica Or Silica-Related Dust Exclusion, and the Total Pollution Exclusion, amongst other grounds.


### **FIRST CAUSE OF ACTON**

(Declaratory Relief – Claims Outside the Scope of the Insuring Agreement)

38.     Plaintiffs incorporate paragraphs 1 through 37 herein as though fully set forth at length hereat.

39.     Plaintiffs have complied with all of their obligations and duties under their respective Policies, except those duties which have been excused by the breach

24

or nonperformance of Defendants, and/or each of them.

40.    An actual controversy exists between Plaintiffs, on the one hand, and Defendants, on the other hand, relating to their respective rights and obligations under the Policies.

41.    Plaintiffs contend the California Silica Lawsuits do not fall within the basic scope of coverage under the Policies including but not limited to the fact that the California Silica Lawsuits are not predicated upon an "occurrence" within the meaning of the Policies because no "accident" is alleged, and the California Silica Lawsuits also allege that Defendants named as defendants in each action knew prior to the Policies' respective policy periods that the "bodily injuries" alleged in the California Silica Lawsuits had occurred. Accordingly, Plaintiffs contend that the California Silica Lawsuits do not fall within the scope of coverage of the Insuring Agreements at issue in each of the Policies.

42.    Defendants, and each of them, dispute these contentions.

43.    A declaratory judgment is necessary to determine the rights and obligations of the parties under the Policies as to this issue.

## SECOND CAUSE OF ACTION

(Declaratory Relief – Silica Or Silica-Related Dust Exclusions)

44.    Plaintiffs incorporate paragraphs 1 through 43 herein as though fully set forth at length hereat.

45.    Plaintiffs have complied with all of their obligations and duties under their respective Policies, except those duties which have been excused by the breach or nonperformance of Defendants, and/or any of them.

46.    An actual controversy exists between Plaintiffs on the one hand and Defendants on the other hand relating to their respective rights and obligations under the Policies.

47.    Plaintiffs contend that the California Silica Lawsuits are precluded from

FIRST AMENDED COMPLAINT

coverage because they fall within the Silica Or Silica-Related Dust Exclusion in each of the Policies issued to Defendants, as the California Silica Lawsuits clearly arise in whole or part out of the "actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust'" as they all allege facts relating to silica exposure and plaintiffs' manifesting silica or silica-related dust caused health conditions, including silicosis. Accordingly, Plaintiffs contend coverage for the California Silica Lawsuits is excluded from coverage.

48.    Defendants, and each of them, dispute these contentions.

49.    A declaratory judgment is necessary to determine the rights and obligations of the parties under the Policies as to this issue.

## **THIRD CAUSE OF ACTION**

(Declaratory Relief – Pollution Exclusion)

50.    Plaintiffs incorporate paragraphs 1 through 49 herein as though fully set forth at length hereat.

51.    Plaintiffs have complied with all of their obligations and duties under their respective Policies, except those duties which have been excused by the breach or nonperformance of Defendants, and/or any of them.

52.    An actual controversy exists between Plaintiffs, on the one hand, and Defendants, on the other hand, relating to their respective rights and obligations under the Policies.

53.    Plaintiffs contend that the California Silica Lawsuits are precluded from coverage because they fall within the pollution exclusions in each of the Policies issued to Defendants, as the California Silica Lawsuits as the Silica Lawsuits allege "Bodily injury" which "would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" Accordingly, Plaintiffs contend that coverage for the Silica Lawsuits is excluded from coverage.

26

FIRST AMENDED COMPLAINT

54.    Defendants, and each of them, dispute these contentions.

55.    A declaratory judgment is necessary to determine the rights and obligations of the parties under the Policies as to this issue.

## **FOURTH CAUSE OF ACTION**

(Defendant Cambria Company LLC Is Not An Insured Under Multiple Policies)

56.    Plaintiffs incorporate paragraphs 1 through 55 herein as though fully set forth at length hereat.

57.    Plaintiffs are informed and believe, and thereon allege that Cambria Company LLC was formed on or about December 7, 2009 by its original filing with the Secretary of State of the State of Minnesota as a domestic limited liability company.

58.    While Defendant Cambria Company LLC is named as a defendant in many of the personal injury/wrongful death actions identified in **Exhibit 1** hereto, it is not an insured under any of the Policies which may have been in effect prior to November 1, 2010.

59.    As Defendant Cambria Company LLC is not identified as an insured under these Policies, there is no coverage for Defendant Cambria Company LLC under those Policies.

60.    Plaintiffs have complied with all of their obligations and duties under their respective Policies, except those duties which have been excused by the breach or nonperformance of Defendants, and/or any of them.

61.    An actual controversy exists between Plaintiffs, on the one hand, and Defendant Cambria Company LLC, on the other hand, relating to their respective rights and obligations under these Policies.

62.    Plaintiffs contend, and/or reserves all rights to contend that there is no coverage for the California Silica Lawsuits owed to Defendant Cambria Company LLC because it is not an insured under the Policies.

27

63.    Defendants, and each of them, dispute these contentions.

64.    A declaratory judgment is necessary to determine the rights and obligations of the parties under the Policies as to this issue.

## FIFTH CAUSE OF ACTION

(Declaratory Relief – Other Policy Terms, Conditions, and Exclusions)

65.    Plaintiffs incorporate paragraphs 1 through 64 herein as though fully set forth at length hereat.

66.    Plaintiffs have complied with all of their obligations and duties under their respective Policies, except those duties which have been excused by the breach or nonperformance of Defendants, and/or any of them.

67.    An actual controversy exists between Plaintiffs, on the one hand, and Defendants, on the other hand, relating to their respective rights and obligations under the Policies.

68.    Plaintiffs contend, and/or reserves all rights to contend that there is no coverage for the California Silica Lawsuits due to the application of other terms, conditions, and exclusions of the Policies, including in light of new or additional information as it is obtained.

69.    Defendants, and each of them, dispute these contentions.

70.    A declaratory judgment is necessary to determine the rights and obligations of the parties under the Policies as to this issue.

## SIXTH CAUSE OF ACTION

(Reimbursement of Defense Costs and Expenses)

71.    Plaintiffs incorporate paragraphs 1 through 70 herein as though fully set forth at length hereat.

72.    Plaintiff Regent Insurance Company will pay attorney fees and costs incurred for the defense of the California Silica Lawsuits in excess $75,000.

FIRST AMENDED COMPLAINT

73.    Because no potential for coverage has ever existed for the California Silica Lawsuits, Plaintiff Regent Insurance Company is entitled to reimbursement from Defendants for all amounts it has paid for uncovered defense expenses as to that Defendant on whose behalf such sums were expended.

74.    Plaintiff Regent Insurance Company has fully reserved the right to reimbursement, hereby demands reimbursement, has received no reimbursement, and if no reimbursement is forthcoming is entitled to a judgment awarding such reimbursement of all amounts incurred by Regent Insurance Company in providing a defense to any Defendant as to claims for which there was no potential for coverage afforded under the Policies, Defendant will be unjustly enriched.

## **PRAYER**

Wherefore, Plaintiffs Regent Insurance Company and General Casualty Company of Wisconsin each pray for the following relief:

A.    A judicial declaration that no coverage is afforded for the California Silica Lawsuits on the grounds that the California Silica Lawsuits do not fall within the scope of the Insuring Agreement;

B.    A judicial declaration that coverage is precluded by the Silica Or Silica-Related Dust Exclusions in the Policies because the California Silica Lawsuits allege "bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica- related dust."

C.    A judicial declaration that coverage is precluded by the Pollution Exclusions in the Policies because the California Silica Lawsuits allege "bodily injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants."

D.    A judicial declaration that there is no coverage for the California Silica Lawsuits due to the application of other terms, conditions, and exclusions of the Policies.

FIRST AMENDED COMPLAINT

E.      For reimbursement to Plaintiff Regent Insurance Company of all sums paid by Regent Insurance Company for defense costs and expenses in connection with the California Silica Lawsuits as to claims for which there was no potential for coverage under the Policies from any Defendant as to whom Regent Insurance Company undertook the defense in a California Silica Lawsuit;

F.      Costs of Suit;

G.      Prejudgment interest, and

H.      All other relief as the Court may deem appropriate, just and proper.

Dated: May 16, 2025                    HINSHAW & CULBERTSON LLP


                                       By: */s/ David T. Hayek*
                                           John DeLascio (*Pro Hac Vice*)
                                           David T. Hayek
                                           Attorneys for Plaintiffs
                                           REGENT INSURANCE COMPANY
                                           and GENERAL CASUALTY
                                           COMPANY OF WISCONSIN

FIRST AMENDED COMPLAINT