CHET A. KRONENBERG (SBN: 222335)
ckronenberg@stblaw.com
ERICA SEDLER (SBN 272250)
erica.sedler@stblaw.com
DYLAN MEIER (SBN: 334939)
dylan.meier@stblaw.com
SIMPSON THACHER & BARTLETT LLP
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Telephone: (310) 407-7500
Facsimile: (310) 407-7502

*Attorneys for Third-Party Defendants*
*The Phoenix Insurance Company and Travelers*
*Property Casualty Company of America*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGENT INSURANCE COMPANY, GENERAL CASUALTY COMPANY OF WISCONSIN,<br><br>Plaintiffs/ Counterclaim Defendants,<br><br>vs.<br><br>CAMBRIA ENTERPRISES, CAMBRIA ENTERPRISES LLC, CAMBRIA COMPANY LLC<br><br>Defendants / Counterclaim Plaintiffs.<br><br>_____<br><br>CAMBRIA ENTERPRISES LLC and CAMBRIA COMPANY LLC,<br><br>Third-Party Plaintiffs<br><br>vs.<br><br>THE PHOENIX INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, ZURICH AMERICAN INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, NATIONAL SURETY CORPORATION, GREAT AMERICAN INSURANCE COMPANY<br><br>Third-Party Defendants. | Case No. 2:25-cv-4142-MRA-MAA<br><br>**JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INSURERS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**<br><br>Judge: Hon. Mónica Ramírez Almadani<br><br>Date: October 20, 2025<br>Time: 1:30 p.m.<br>Place: Courtroom 9B<br><br>[Filed concurrently herewith: Insurers' Notice of Motions and Motions for Judgment on the Pleadings; Joint Appendix in Support of Insurers' Motions for Judgment on the Pleadings; Joint Request for Judicial Notice in Support of Insurers' Motions for Judgment on the Pleadings; Insurers' Separate Memoranda; Insurers' Declarations; and [Proposed] Order] |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND.......................................................................................3

    I.    Cambria's Allegations/Silica Lawsuits.................................................3

    II.   Insurers' Policies .................................................................................5

LEGAL STANDARDS ...............................................................................................5

    I.    Judgment on the Pleadings..................................................................5

    II.   Policy Interpretation...........................................................................6

ARGUMENT ...............................................................................................................7

    I.    The Duty to Defend Is Determined at the Outset of an Action ...............................................................................................7

    II.   Because All Bodily Injuries Arise Out of Exposure to Silica or Silica-Related Dust, the Silica Exclusions Preclude Coverage...........................................................................................8

    III.   Leave to Amend Would Be Futile .....................................................11

CONCLUSION.........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*24th & Hoffman Investors, LLC v. Northfield Insurance Company*,
82 Cal. App. 5th 825 (2022) ...................................................................................7

*AIU Ins. v. Superior Court*,
51 Cal. 3d 807 (1990) ............................................................................................7

*Aram Logistics v. United States Liability Insurance Company*,
2024 WL 390076 (S.D. Cal. Jan. 31, 2024) .......................................................11

*Belmonte v. Emplrs Ins. Co.*,
83 Cal. App. 4th 430 (2000) ..................................................................................7

*Clemco Indus. v. Com. Union Ins. Co.*,
665 F. Supp. 816 (N.D. Cal. 1987)........................................................................9

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2009) .................................................................................6

*Doleman v. Meiji Mut. Life Ins. Co.*,
727 F.2d 1480 (9th Cir. 1984) ..............................................................................5

*Gunderson Fire Ins. Exch.*,
37 Cal. App. 4th 1106 (1995)................................................................................7

*Haas v. Travelex Insurance Services Inc.*,
555 F. Supp. 3d 970 (C.D. Cal. 2021)................................................................11

*Hanover Am. Ins. Co. v. Francini, Inc.*,
2025 U.S. Dist. LEXIS 70996 (C.D. Cal. Mar. 27, 2025) .......................passim

*Horace Mann Ins. Co. v. Barbara B.*,
4 Cal. 4th 1076 (1993) ..........................................................................................8

*Hudson Ins. Co. v. Colony Ins. Co.*,
624 F.3d 1264 (9th Cir. 2010)............................................................................11

*Hurley Constr. Co. v. State Farm Fire & Cas. Co.*,
10 Cal. App. 4th 533 (1992)................................................................................11

*Inns-by-the-Sea v. California Mutual Ins. Co.*,
71 Cal. App. 5th 688 (2021) ..................................................................................7

*LSH Co. v. Transamerica Life Ins. Co.*,
2020 U.S. Dist. LEXIS 188588 (C.D. Cal. Sep. 15, 2020) ................................6

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
187 Cal. App. 4th 766 (2010)................................................................................7

- ii -

*Northfield Ins. Co. v. Sandy's Place, LLC,*
  530 F. Supp. 3d 952 (E.D. Cal. 2021) ...............................................................6

*Ocean Towers Hous. Corp. v. Evanston Ins. Co.,*
  772 F. App'x 459 (9th Cir. 2019) .....................................................................8

*Pittelman v. Pierce,*
  6 Cal. App. 4th 1436 (2d Dist. 1992) ...............................................................6

*Riley v. Fitzgerald,*
  178 Cal. App. 3d 871 (2d Dist. 1986) ...............................................................6

*Rosen v. State Farm Gen. Ins. Co.,*
  30 Cal. 4th 1070 (2003) ....................................................................................7

*Sprewell v. Golden State Warriors,*
  2001 U.S. App. LEXIS 20434 (9th Cir. Dec. 28, 2001) ...................................6

*Storek v. Fidelity & Guar. Ins. Underwriters, Inc.,*
  504 F. Supp. 2d 803 (N.D. Cal. 2007)...............................................................8

*U.S. ex rel. Chunie v. Ringrose,*
  788 F.2d 638 (9th Cir. 1986) .............................................................................5

*Waller v. Truck Ins. Exch., Inc.,*
  11 Cal. 4th 1 (1995)........................................................................................6, 7

*Westoil Terminals Co. v. Indus. Indem. Co.,*
  110 Cal. App. 4th 139 (2nd Dist. 2003) ............................................................7

## STATUTES

Cal. Civ. Code § 1639.................................................................................................7

Fed. R. Civ. P. 12(c) ..................................................................................................5

Plaintiffs and Counterclaim Defendants Regent Insurance Company ("Regent") and General Casualty Company of Wisconsin ("General Casualty") (together, "Plaintiff Insurers"), and Third-Party Defendants The Phoenix Insurance Company, Travelers Property Casualty Company Of America, Zurich American Insurance Company, Navigators Insurance Company, National Surety Corporation, and Great American Insurance Company ("Third-Party Defendant Insurers" and, together with Plaintiff Insurers, "Insurers") hereby submit this joint memorandum of points and authorities in support of their respective motions for judgment on the pleadings.

This brief addresses the allegations and issues common to all Insurers. Per the Order (ECF 74), Insurers also concurrently file their separate memoranda of points and authorities addressing their respective policies.

## PRELIMINARY STATEMENT

Each Insurer issued one or more primary or excess/umbrella commercial liability policies (the "Policies") to Cambria Enterprises, Cambria Enterprises LLC, and/or Cambria Company LLC (collectively, "Cambria"). Each of the Policies contains a silica or silica-related dust exclusion, or follows form to a Policy with such an exclusion.

Plaintiff Insurers initiated this action seeking declaratory judgment that they owe no duty to defend or indemnify Cambria in one hundred seventy-four (174) bodily-injury lawsuits filed against Cambria Company LLC ("Cambria Company"), each of which arises out of the underlying claimants' exposure to silica contained in Cambria Company's quartz surface slabs (the "Silica Lawsuits"). Cambria filed a Counterclaim against Plaintiff Insurers, and Cambria Enterprises LLC and Cambria Company ("Cambria Parties") filed a Third-Party Complaint against Third-Party Defendant Insurers, seeking declaratory judgment and alleging breach of contract and

- 1 -

bad faith claims asserting coverage for the Silica Lawsuits. No coverage, however, exists under Insurers' express silica exclusions contained in the Policies.[1]

California law is well settled that a policy exclusion precludes coverage if it is explicit and unambiguous. California courts have consistently upheld the language of the policy exclusions barring coverage for bodily injury arising out of silica dust. The exclusions in the Insurers' Policies do precisely that here. The allegations in the Silica Lawsuits are based on Cambria Company's manufacture and distribution of quartz surface slabs. Compl. ¶ 52. Specifically, the Silica Lawsuits allege that each claimant developed silicosis and other silica-related diseases from exposure to silica or silica-related dust during fabrication of Cambria Company's unfinished stone products.

As exemplified by the underlying *Quiroz* complaint (Request for Judicial Notice ("RJN") Ex. 2 ("*Quiroz* Complaint"))[2], the gravamen of the underlying claimants' allegations is that (1) Cambria Company's quartz "product is ***almost 100% crystalline silica***" (*Quiroz* Compl. ¶ 483 (emphasis added)); (2) Cambria Company's "artificial stone products were defective because they contained ***extremely high concentrations of crystalline silica***" (*id.* ¶ 510 (emphasis added)); (3) "dust containing crystalline silica is ***always generated***" when Cambria Company's "material is ground or cut" (*id.* ¶ 483 (emphasis in original)); (4) "the fabrication of artificial stone generates ***massive amounts*** of ultrafine and nanosized crystalline

---

[1] Insurers' Policies contain other provisions that independently preclude coverage for Cambria's claims, including but not limited to, pollution exclusions. While Insurers do not rely on such additional provisions for purposes of their motions for judgment on the pleadings, Insurers have and continue to reserve all rights pursuant thereto and preserve all other defenses.

[2] In another insurance coverage action pending in this Court, *Pacific Shore Stones, LLC, et. al. v. Allied Property & Casualty Company, et. al.*, Case No. 2:25-cv-04370), plaintiffs allege that the *Quiroz* Complaint is representative of "most if not all" of the other Silica Lawsuits. RJN Ex. 1 ¶ 27. Accordingly, in citing the allegations of the Silica Lawsuits, Insurers reference the allegations in *Quiroz*. Moreover, the Joint Appendix in Support of Insurers' Motions for Judgment on the Pleadings ("Jt. App.") annexed hereto shows that the allegations in all of the underlying complaints are substantially similar.

- 2 -

silica particles" (*id*. ¶ 504 (emphasis added)); and (5) "silica" contained in Cambria Company's products was a "***substantial factor***" in "causing, prolonging, and aggravating [claimants'] ***silicosis*** and [their] related and consequential injuries" (*id*. ¶ 1307 (emphasis added)). *See also* Jt. App. Nos. 1-2.

Defendants' silica exclusions bar coverage for any bodily injury arising out of inhalation or exposure to any substance containing silica or silica dust. Therefore, just as this Court recently held in *Hanover Am. Ins. Co. v. Francini, Inc*., 2025 U.S. Dist. LEXIS 70996, at *13 (C.D. Cal. Mar. 27, 2025), the plain reading of Insurers' silica exclusions bars coverage for the injuries alleged in the Silica Lawsuits, and Insurers have no duty to defend Cambria. And, if there is no duty to defend, there cannot be a duty to indemnify.

Accordingly, based on the pleadings in this action, the complaints in the Silica Lawsuits, and the language of Insurers' policies, the Court should grant Insurers' Motions, enter judgment in Insurers' favor, and dismiss Cambria's Counterclaim against Plaintiff Insurers and Cambria Parties' Third-Party Complaint against Third-party Defendant Insurers because each of the causes of action is predicated on the existence of coverage where none exists.

## FACTUAL BACKGROUND

### I. Cambria's Allegations/Silica Lawsuits

At least one hundred seventy-four (174) Silica Lawsuits have been filed against Cambria Company for alleged bodily injury that occurred during the relevant Policy period(s), wherein each underlying plaintiff alleges they developed silicosis and related injuries from exposure to silica from working with Cambria Company's stone products. *See* RJN Exs. 2-175.

As this Court held in *Hanover*, the "underlying state actions are all substantially similar," alleging that "underlying plaintiffs suffer from silicosis and related conditions and consequential injuries because of their exposure to ***silica*** and ***silica-related dust*** while working with the underlying defendants' products."

- 3 -

*Hanover*, 2025 U.S. Dist. LEXIS 70996, at *4.[3]  Compl. ¶ 27.  Indeed, as the *Quiroz* Complaint demonstrates:

- Cambria Company's quartz "product is ***almost 100% crystalline silica***." *Quiroz* Compl. ¶ 483) (emphasis added).

- Cambria Company's "artificial stone products were defective because they contained ***extremely high concentrations of crystalline silica***." *Id.* ¶ 510 (emphasis added).

- "[D]ust containing crystalline silica is ***always generated***" when Cambria Company's "material is ground or cut." *Id*. ¶ 483 (emphasis in original).

- "Cutting, grinding, drilling, chipping, edging, and/or polishing (collectively 'fabricating') stone products produces ***large amounts of respirable crystalline silica dust*** which stone fabrication workers inhale, typically causing chronic ***silicosis*** as well as lung cancer and various other ***silica-***related diseases." *Id*. ¶ 95.

- "[T]he fabrication of artificial stone generates ***massive amounts*** of ultrafine and nanosized crystalline silica particles that . . . are inhaled by fabricators and cause progressive massive fibrosis." *Id*. ¶ 504 (emphasis added).

- Cambria Company's safety data sheet for its product warned that "'continued overexposure' to respirable crystalline silica can cause ***silicosis***." *Id.* ¶ 483 (emphasis added).

- "Each of [Cambria Company's] stone products contained ***silica***, toxic metals and other fibrogenic substances, that entered [claimant's] body and were ***substantial factors*** in causing, prolonging, and aggravating his ***silicosis*** and his ***related and consequential injuries***." *Id*. ¶ 1307 (emphasis added).

- Cambria Company's President and CEO has acknowledged that "the dangers of silica have been known for decades." *Id.* ¶ 488.

---

[3] Sixty-seven (67) Silica Lawsuits addressed in *Hanover* are also at issue here.  The remaining Silica Complaints are substantially similar for the same reasons.

- 4 -

- "The biggest problem the stone industry faces is that artificial stone is the cause of a worldwide *epidemic of accelerated silicosis* among stone countertop fabricators." *Id*. ¶ 508 (emphasis added).
- "[E]xposure to respirable crystalline silica not only causes silicosis . . . , but also causes lung cancer." *Id*. ¶ 504.
- There is an "ever-increasing number" of fabricators "who have developed silicosis with progressive massive fibrosis." *Id*. ¶ 506.

*See also* Jt. App. at Nos. 1, 2.  For all these reasons, the Silica Lawsuits allege that the "silica" contained in Cambria Company's products was a "*substantial factor*" in "causing, prolonging, and aggravating [claimants'] silicosis and [their] related and consequential injuries." *Id*. ¶ 1307 (emphasis added); *see also* Jt. App. at Nos. 1, 2.

## II.    Insurers' Policies

Each Insurer issued one or more commercial general liability or commercial umbrella liability policies to Cambria, which contain a silica or silica-related dust exclusion, or follow form to a policy with such an exclusion.  Each Insurer addresses its specific policy provisions and exclusions in separate memoranda in support of their motion for judgment on the pleadings per this Court's order.  *See* ECF 74.

## LEGAL STANDARDS

## I.    Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), is proper when the moving party clearly establishes on the face of the pleadings that (1) no material issue of fact remains to be resolved; and (2) it is entitled to judgment as a matter of law.  *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984).

While the court must accept Cambria's factual allegations as true, it "need not assume the truth of legal conclusions cast in the form of factual allegations." *See U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986); *accord LSH*

- 5 -

*Co. v. Transamerica Life Ins. Co.*, 2020 U.S. Dist. LEXIS 188588, at *15 (C.D. Cal. Sep. 15, 2020) ("[A] court is not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotations omitted).  "[W]hen ruling on [a motion for judgment on the pleadings], courts must consider the complaint in its entirety, as well as other sources . . ., in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Hanover*, 2025 U.S. Dist. LEXIS 70996 at *7 (omission in original) (internal quotations omitted).

Furthermore, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors*, 2001 U.S. App. LEXIS 20434, at *12 (9th Cir. Dec. 28, 2001); *accord Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2009) ("We are not . . . required to accept as true allegations that contradict exhibits attached to the [c]omplaint or matters properly subject to judicial notice . . . .").  Thus, the Court should not accept as true Cambria's conclusory allegations or allegations that are contradicted by the materials incorporated in the pleadings such as the complaints in the Silica Lawsuits and Insurers' Policies.

## II.    Policy Interpretation

Insurance policy interpretation is governed by state law.  In California, policy interpretation is a question of law to be evaluated by the court.  *Northfield Ins. Co. v. Sandy's Place, LLC,* 530 F. Supp. 3d 952, 962 (E.D. Cal. 2021); *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995) ("When determining whether a particular policy provides a potential for coverage and a duty to defend," California courts "are guided by the principle that interpretation of an insurance policy is a question of law.")[4]

---

[4] Insurers do not concede that California law applies.  Minnesota law may apply because the Policies were issued in Minnesota.  However, there is no material conflict between the laws of California and Minnesota concerning the applicability of a silica exclusion and, thus, there is "no need . . . to reach the conflict of law issue" for purposes of this Motion. *See Pittelman v. Pierce*, 6 Cal. App. 4th 1436, 1443 (2d Dist. 1992) (affirming summary judgment for defendants without deciding conflict of law issue); *see also Riley v. Fitzgerald*, 178 Cal. App. 3d 871, 875 (2d Dist. 1986) (finding that conflict of law analysis is necessary only where there is "true conflict of laws").  If the Third-Party Complaint survives (it should not), Insurers may raise

- 6 -

"Insurance contracts are to be interpreted . . . in the same manner as any other contract, giving effect to the mutual intention of the parties." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 777 (2010). "Such intent is to be inferred, if possible, ***solely from the written provisions*** of the contract." *AIU Ins. v. Superior Court*, 51 Cal. 3d 807, 822 (1990) (emphasis added); *accord* Cal. Civ. Code § 1639. "If the policy language is clear and explicit, it governs." *Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1074 (2003) (internal quotations omitted).

"Where an exclusion is clear and unambiguous, it is given its literal effect." *Westoil Terminals Co. v. Indus. Indem. Co.*, 110 Cal. App. 4th 139, 146 (2nd Dist. 2003) (internal quotations omitted). Thus, "[c]overage is ***precluded*** when the exclusionary language is explicit." *Belmonte v. Emplrs Ins. Co.,* 83 Cal. App. 4th 430, 435 (4th Dist. 2000) (emphasis added). "Courts will not strain to create an ambiguity where none exists."[5] *Waller*, 11 Cal. 4th at 18-19; *accord Hanover*, 2025 U.S. Dist. LEXIS 70996 at *8; *Inns-by-the-Sea v. Cal. Mut.l Ins. Co.*, 71 Cal. App. 5th 688, 698 (4th Dist. 2021). Indeed, "[a]n insurer ordinarily is free to limit the risks it assumes, and [courts] do not rewrite any provision of any contract." *24th & Hoffman Investors, LLC v. Northfield Ins. Co.*, 82 Cal. App. 5th 825, 833 (1st Dist. 2022); *see also Gunderson Fire Ins. Exch.,* 37 Cal. App. 4th 1106, 1118 (1st Dist. 1995) ("An insurance company has the right to limit the coverage of a policy issued by it and the plain language of the limitation must be respected.").

## ARGUMENT

### I.      The Duty to Defend Is Determined at the Outset of an Action

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of

---

conflict of law issues at the appropriate time.

[5] There are no allegations in the Counterclaim or Third-Party Complaint that the Policies are ambiguous.

the policy." *Ocean Towers Hous. Corp. v. Evanston Ins. Co.*, 772 F. App'x 459, 460 (9th Cir. 2019) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)). Courts should "compare[] the allegations of the underlying complaints with the terms of the . . . [e]xclusion in the . . . policies" to determine if there is "no potential for coverage and thus no duty to defend." *Id.*

"Under California law, an insurer's duty to defend is determined by 'those facts known by the insurer at the inception of a third party lawsuit,' … or 'from the facts and inferences known to an insurer from the pleadings, available information and its own investigations at the time of the tender of defense,'. . . . there are no California cases holding that unpled facts, occurring after the filing of the third party's complaint, are sufficient to establish an insurer's duty to defend." *Storek v. Fidelity & Guar. Ins. Underwriters, Inc.*, 504 F. Supp. 2d 803, 812 (N.D. Cal. 2007).

## II.    Because All Bodily Injuries Arise Out of Exposure to Silica or Silica-Related Dust, the Silica Exclusions Preclude Coverage

All of the Silica Lawsuits allege bodily injury arising in substantial part out of the inhalation of silica or silica-related dust resulting in silicosis. *See* Jt. App. Nos. 1-2. As the *Quiroz* Complaint demonstrates, *see supra*, pp. 3-4, Cambria Company's quartz products are "***almost 100% crystalline silica***" (*Quiroz* Compl. ¶ 483 (emphasis added)) and, thus, "defective" because they contained such "***extremely high concentrations of crystalline silica***" (*id.* ¶ 510 (emphasis added)). *See also* Jt. App. Nos. 1-2. And it is alleged that "dust containing crystalline silica is ***always generated***" in "***massive amounts***" when Cambria Company's products are ground or cut. *Id.* ¶¶ 483, 504 (emphasis in original); *see also* Jt. App. Nos. 1-2.

It is further alleged that "silica" in Cambria Company's products was a "***substantial***" factor in "causing, prolonging, and aggravating [the claimants'] ***silicosis*** and [their] ***related and consequential injuries***." *Id.* ¶ 1307 (emphasis added); *see also* Jt. App. Nos. 1-2. Silicosis is a progressive, incurable, fibrotic lung disease caused by inhalation of respirable crystalline silica dust. *See Clemco Indus.*

*v. Com. Union Ins. Co.*, 665 F. Supp. 816 (N.D. Cal. 1987).   The underlying claimants assert that in fact, "[t]he biggest problem the stone industry faces is that artificial stone is the cause of a worldwide ***epidemic of accelerated silicosis*** among stone countertop fabricators."  *Id*. ¶ 508 (emphasis added); *see also* Jt. App. Nos. 1-2. Therefore, it is indisputable that the injuries allegedly suffered by the claimants in the Silica Lawsuits, including silicosis, necessarily arise out of the claimants' exposure to silica and silica-related dust.

In any event, the plain language of the silica exclusions in Insurers' Policies does not require silica to be the sole component of the harm-causing product for the exclusion to apply.  And there are no allegations of bodily injury that arose separately from the alleged or actual inhalation of silica or silica-related dust.  *See e.g.*, *Quiroz* Compl. ¶ 1307 ("Each of [Cambria Company's] stone products contained ***silica***, toxic metals and other fibrogenic substances, that entered [claimant's] body and were ***substantial factors*** in causing, prolonging, and aggravating his ***silicosis*** and his ***related and consequential injuries***."); *see also* Jt. App. at No. 1.  As such, the underlying claimants' allegations demonstrate that the bodily injuries they suffered were not merely incidentally related to claimants' exposure to "massive amounts" of silica particles emanated from Cambria Company's "almost 100%" silica products.[6]

For all these reasons, Cambria's contention that, in addition to silica, the claimants in the Silica Lawsuits were also exposed to volatile organic compounds ("VOCs") (Compl. ¶¶ 60-63) within the silica-containing stone dust cannot defeat the application of Insurers' silica exclusions.  The mere presence of other components in Cambria Company's silica-containing products is irrelevant to the application of Insurers' silica exclusions.  In fact, the Silica Lawsuits define the "artificial stone dust" at issue as "containing respirable crystalline silica . . . , metals . . . , and volatile

---

[6] Notably, the *Quiroz* Complaint contains over 1,100 references to the term "silicosis" and over 900 references to the term "silica," further underscoring their central role in the claims.

JOINT MPA IN SUPPORT OF MOTIONS FOR JUDGMENT ON THE PLEADINGS
NO. 2:25-CV-04142-MRA-MAA

organic compounds [VOCs]." *Quiroz* Compl. ¶ 111 (emphasis added).  Therefore, any exposure to VOCs from stone dust necessarily involves exposure to silica and, thus, triggers the silica exclusion in Insurers' Policies.

Indeed, in granting the insurers' motion for judgment on the pleadings in *Hanover* on the ground that the silica exclusion barred coverage,[7] this Court rejected the insured's argument that the silica exclusion did not apply because the underlying claimants were allegedly exposed to other harmful substances in addition to silica. *Hanover*, 2025 U.S. Dist. LEXIS 70996, at *10.  This Court found that "the primary injuries alleged in the underlying state actions are silicosis (which is caused by silica inhalation) and resulting complications from that lung disease—that is, silica is not alleged as merely one of many potential chemicals causing the underlying plaintiffs' injuries, but as the ***main*** chemical contributing to their injuries."  *Id*. at *11-12 (emphasis in original).  "Indeed, ***the whole of each underlying complaint is focused on the dangers of exposure to crystalline silica***."  *Id*. at *12 (emphasis added).  In other words, the Court explained that "the[] allegations are ***all*** focused on the risk of silica exposure, silicosis, and injuries related to silicosis that [the insured's] products allegedly pose."  *Id.* (emphasis added).

Proceeding to compare the allegations of the underlying complaints with the terms of the insurance policies at issue, the Court thus concluded that: (i) "[t]he silica exclusion provides that the insurance policies do not apply to 'bodily injuries' arising 'in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust'"; (ii) "[a]ll the allegations against [the insured] are specific to silica or silica-related dust"; and (iii) "[t]he recovery sought against [the insured] is based on bodily injuries, sickness, or disease caused by that

---

[7] The Court granted leave to amend but cautioned that it is "skeptical that [the insured] can amend the Answer to cure the deficiencies identified herein consistent with the existing Answer and this Order." *Hanover*, 2025 U.S. Dist. LEXIS 70996, at *15 (C.D. Cal. Mar. 27, 2025).  After the insured filed an Amended Answer, the insurers filed another Motion for Judgment on the Pleadings, which is currently pending before the Court.

JOINT MPA IN SUPPORT OF MOTIONS FOR JUDGMENT ON THE PLEADINGS
NO. 2:25-CV-04142-MRA-MAA

silica or silica-related dust." *Id*. at \*13.  Accordingly, the Court held that because "policy language is clear and unambiguous[,] [t]hese bodily injuries, which arise from silica or silica-related dust, ***fall squarely*** within the bounds of coverage [insurers] sought to exclude from their [p]olicies." *Id*. (emphasis added).  The same facts are at issue here and the Court should reach the same conclusion as it did in *Hanover*.

### III.    Leave to Amend Would Be Futile

Leave to amend "is properly denied . . . if amendment would be futile." *Haas v. Travelex Insurance Services Inc*., 555 F. Supp. 3d 970, 975 (C.D. Cal. 2021). (internal quotations omitted).

An insurer "owes no duty defend based upon mere speculation as to claims that" an underlying plaintiff might have brought or might bring in the future. *Aram Logistics v. United States Liability Insurance Company*, 2024 WL 390076, at \*6 (S.D. Cal. Jan. 31, 2024).  "An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at ***some*** future date." *Id.*; *see also Hurley Constr. Co. v. State Farm Fire & Cas. Co*., 10 Cal. App. 4th 533, 538 (1992) ("the insured may not speculate about unpled third party claims to manufacture coverage"); *see also Hudson Ins. Co. v. Colony Ins. Co*., 624 F.3d 1264, 1267–68 (9th Cir. 2010) ("These cases concluded that there was no potential for coverage, not because the complaint did not list a particular legal cause of action, but because the complaint did not allege any facts supporting a covered cause of action.").

Here, Cambria has not and cannot allege any facts supporting a covered cause of action related to the Silica Lawsuits.  All bodily injuries alleged arise from the underlying claimants' inhalation of massive amounts of highly concentrated silica emanated from Cambria Company's products.  Because the Policies' silica exclusions expressly exclude coverage for the injuries alleged in the Silica Lawsuits,

- 11 -

Cambria can state no viable claim in an amended answer or complaint, and thus leave to amend here would be futile.

## CONCLUSION

Comparing the allegations in the Silica Lawsuits to the unambiguous terms of each Policy, Insurers have no duty to defend, and therefore no duty to indemnify, as a matter of law. Insurers request that the Court grant their motions for judgment on the pleadings without leave to amend.

Dated: August 25, 2025              SIMPSON THACHER & BARTLETT LLP

By: _/s/ Chet A. Kronenberg_
    CHET A. KRONENBERG
    ERICA SEDLER
    DYLAN J. MEIER

Attorneys for Third-Party Defendants
THE PHOENIX INSURANCE COMPANY and
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA

Dated: August 25, 2025              HINSHAW & CULBERTSON LLP

By: _/s/John DeLascio_
    JOHN DELASICO (*ADMITTED PRO HAC VICE*)
    DAVID T. HAYEK

Attorneys for Plaintiffs/Counterdefendants
REGENT INSURANCE COMPANY and
GENERAL CASUALTY COMPANY OF
WISCONSIN

Dated: August 25, 2025              CLYDE & CO US LLP

By: _/s/ Brian D. Harrison_
    ALEX E. POTENTE
    BRIAN D. HARRISON
    DAVID M. RHODES

Attorneys for Third-Party Defendant
NAVIGATORS INSURANCE COMPANY

- 12 -

Dated:  August 25, 2025

RUGGERI PARKS WEINBERG LLP

By: /s/ Matthew J. Antonelli
        MATTHEW J. ANTONELLI

Attorney for Third-Party Defendant
GREAT AMERICAN INSURANCE COMPANY

Dated:  August 25, 2025

SELMAN LEICHENGER EDSON HSU
NEWMAN & MOORE LLP

By: /s/ Laura R. Ramos
        ELDON S. EDSON
        LAURA R. RAMOS

Attorneys for Third-Party Defendant
ZURICH AMERICAN INSURANCE
COMPANY

Dated:  August 25, 2025

GORDON REES SCULLY MANSUKHANI,
LLP

By: /s/ Matthew S. Foy
        MATTHEW S. FOY
        ERIN B. NEWMAN

Attorneys for Third-Party Defendant
NATIONAL SURETY CORPORATION

# SIGNATURE CERTIFICATION

I hereby attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  August 25, 2025                    By: /s/ *Chet A. Kronenberg*