Alexander E. Potente (State Bar No. 208240)
*alex.potente@clydeco.us*
Brian D. Harrison (State Bar No. 157123)
*brian.harrison@clydeco.us*
David M. Rhodes (State Bar No. 214493)
*david.rhodes@clydeco.us*
CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801

Attorneys For Third-Party Defendant
Navigators Insurance Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| REGENT INSURANCE COMPANY, GENERAL CASUALTY COMPANY OF WISCONSIN, <br><br> Plaintiffs/Counterclaim Defendants, <br><br> vs. <br><br> CAMBRIA ENTERPRISES, CAMBRIA ENTERPRISES LLC, CAMBRIA COMPANY LLC, <br><br> Defendants/Counterclaim Plaintiffs, <br>———————————————— <br><br> CAMBRIA ENTERPRISES LLC and CAMBRIA COMPANY LLC, <br><br> Third-Party Plaintiffs, | Case No. 2:25-cv-04142-MRA-(MAAx) <br><br> **NAVIGATORS INSURANCE COMPANY'S SEPARATE MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR JUDGMENT ON THE PLEADINGS** <br><br> Judge: Mónica Ramírez Almadani <br> Date: October 20, 2025 <br> Time: 1:30 pm <br> Courtroom:  9B <br><br> [Filed concurrently herewith: Notice of Motions; Insurers' Joint Memorandum; Declaration of T. Brady; Joint Request for Judicial Notice; Joint Appendix; Proposed Order] |

vs.

THE PHOENIX INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, ZURICH AMERICAN INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, NATIONAL SURETY CORPORATION, GREAT AMERICAN INSURANCE COMPANY,

Third-Party Defendants.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

# TABLE OF CONTENTS

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

Page

I.    INTRODUCTION .................................................................................................6

II.   FACTUAL BACKGROUND ...............................................................................7

      A.    The Navigators Excess Policies..........................................................7

      B.    Cambria's Allegations / Silica Lawsuits.............................................7

III.  ARGUMENT .......................................................................................................9

      A.    Cambria's Claims Against Navigators Fail Because Coverage
            For The Silica Lawsuits Is Barred By The Silica Exclusion ...............9

            1.    The Navigators Policies' Have A Broad And Expansive
                  Silica Exclusion ......................................................................9

            2.    The Silica Exclusion In The Navigators Policies Applies
                  To The Silica Lawsuits To Preclude Coverage .......................10

      B.    Cambria's Claims Against Navigators Fail Because There Is No
            Coverage For The Silica Lawsuits Under The Travelers
            Primary Policies ................................................................................13

      C.    Cambria's Causes of Action For Breach of Contract And
            Declaratory Judgment Fail.................................................................13

      D.    Navigators Is Not A Proper Party To This Action As Cambria
            Has Not Shown That The Underlying Limits Have Been
            Exhausted ..........................................................................................14

IV.   CONCLUSION .................................................................................................15

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Century Trans. Sys., Inc. v. Am. Empire Surp. Lines Ins. Co.*,
   42 Cal.App.4th 121 (1996) .................................................................................................. 10

*Cmty. Redev. Agency v. Aetna Cas. & Sur. Co.*,
   50 Cal.App.4th 329 (1996) .................................................................................................. 14

*Cnty. of Santa Clara v. U.S. F&G. Co.*,
   1994 WL 715657 (N.D. Cal. Dec. 19, 1994) ...................................................................... 14

*Cobb v. Pac. Mut. Life Ins.*,
   4 Cal.2d 565 (1935) ............................................................................................................ 15

*Coca Cola Bottling Co v. Columbia Cas. Ins. Co.*,
   11 Cal.App.4th 1176 (1992) ................................................................................................ 13

*Davis v. Farmers Ins. Grp.*,
   134 Cal.App.4th 100 (2005) ................................................................................................ 10

*Degussa Corp. v. US*,
   508 F.3d 1044 (Fed. Cir. 2007) ............................................................................................. 9

*Diamond v. Univ. of So. Cal.*,
   11 Cal.App.3d 49 (1970) ..................................................................................................... 15

*Fox Paine & Co., LLC v. Twin City Fire Ins. Co.*,
   104 Cal.App.5th 1034 (2024) .............................................................................................. 15

*Fox Paine & Co. LLC v. Twin City Fire Ins. Co.*,
   559 P.3d 612 (Cal. 2024) .................................................................................................... 15

*Garage & Serv. St. Empl. v. P. Mut. Life Ins.*,
   2 Cal.App.3d 706 (1969) ..................................................................................................... 15

*Hanover Am. Ins. Co. v. Francini, Inc.*,
   No. 2:23-cv-10047, 2025 WL 1090925 (C.D. Cal. Mar. 27, 2025)......... 8, 12, 13

*Iolab Corp. v. Seaboard Sur. Co.*,
   15 F.3d 1500 (9th Cir. 1994) .............................................................................................. 14

*Mauro v. Ohio Sec. Ins., Co.*,
No. 21-3095, 2022 WL 10319967 (3rd Cir. Oct. 18, 2022) ................................ 9

*Mauro v. Ohio Sec. Ins.*,
No. 20-3319, 2021 WL 5040265 (E.D. Penn. Oct. 29, 2021) ............................ 13

*Medill v. Westport Ins. Corp.*,
143 Cal.App.4th 819 (2006) ...................................................................... 10, 11

*Qualcomm, Inc. v. Cert. Under.*,
161 Cal.App.4th 184 (2008) ...................................................................... 14, 15

*Taylor v. Johnston*,
15 Cal.3d 130 (1975) ........................................................................................ 15

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

# I.   INTRODUCTION[1]

In its third-party complaint, Third Party Plaintiff Cambria seeks insurance coverage from Third-Party Defendant Navigators Insurance Company ("Navigators") for at least 174 Silica Lawsuits asserted against Cambria by countertop fabrication workers who allege they sustained silicosis and related injuries from inhaling silica-containing dust from working with its products composed of over 93% silica.

Cambria's claims against Navigators for insurance coverage fail because an explicit and unambiguous silica exclusion in the Navigators policies eliminates coverage for claims of liability arising out of the alleged inhalation or ingestion of silica or dust which contains silica.  As set forth in the supporting Joint Appendix ("Jt. Appx."), all claimants in the Silica Lawsuits allege that they developed silicosis and silica-related bodily injuries that arose from their exposure to and inhaling of silica or dust containing silica, bringing each Silica Lawsuit squarely within the scope of the silica exclusion in the Navigators policies.

Cambria's claims for coverage also fail because: (1) the Navigators policies, which are excess insurance, follow and incorporate the exclusions of the underlying policies and there is no coverage for Cambria's claims under those underlying policies; and (2) the policy limits of the underlying policies have not been exhausted.

Since each of Cambria's causes of action against Navigators is based on the alleged existence of insurance coverage, judgment should be entered in favor of Navigators because the silica exclusion in each Navigators policy, and silica exclusions in the underlying policies that are incorporated into the Navigators policies, eliminate defense or indemnity coverage for the Silica Lawsuits.  Thus, Navigators is entitled to judgment as a matter of law.

---

[1] This memorandum uses many of the same defined terms as the Joint Memorandum.

41054051

## II. FACTUAL BACKGROUND

### A. The Navigators Excess Policies

Navigators issued three excess insurance policies to Cambria with effective periods of July 1, 2022 to July 1, 2023, July 1, 2023 to July 1, 2024, and July 1, 2024 to July 1, 2025 (the "Navigators Policies"). (Compl. ¶29; Declaration of Timothy Brady ("Brady Decl.") ¶¶3-10 Exs. A-C.)  Each Navigators Policy is excess to underlying insurance for the same period and only provides coverage if there is coverage under such insurance and the limits of such underlying insurance are exhausted, as explained further in Section III below.  Further, each Navigators Policy contains a silica exclusion, which is discussed in Section III below.

### B. Cambria's Allegations / Silica Lawsuits

The core allegations in the operative complaints in the Silica Lawsuits are substantively the same.  All of the complaints in the Silica Lawsuits contain substantially similar allegations explaining the hazards and health impacts of silica exposure in the fabrication of artificial stone products, the alleged exposure of each underlying claimant to silica dust during the fabrication process and harm therefrom, and the alleged role of the underlying defendants, including Cambria, in exposing the claimants to injury due to silica exposure.  (*See, e.g., Quiroz* TAC ¶¶89-99, 106-117, 125-178, 198-201, 480-510; *Reyes* SAC ¶¶50-99, 178-187, 358-362, 440-450; Jt. RJN Exs. 2-175; *see also* Jt. Appx. Nos. 1-2.)

The Joint Appendix includes citations to core allegations in each complaint that claimant suffered from silicosis as a result of exposure to and inhaling silica dust.  (Jt. Appx. Nos. 1-2; Jt. RJN Exs. 2-175.)

The allegations in *Quiroz v. Am. Marble & Onyx Co., Inc., et al.*, No. 24STCV01477 (LA Sup. Ct.), are representative of the Silica Lawsuits.  (Jt. RJN Ex. 2 (*Quiroz* Third Amended Complaint ("*Quiroz* TAC")).)  The *Quiroz* TAC mentions "silica" 800+ and "silicosis" 1,000+ times.  In addition to citations to the *Quiroz* TAC in the Joint Memorandum, which Navigators incorporates into this

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

brief as if stated in full herein, the *Quiroz* TAC alleges:

- The underlying claimant fabricated Cambria's stone products and was injured from regularly "inhal[ing] silica-containing dust from [those] stone products". (*Quiroz* TAC ¶¶105-111 (emph. added).) As result, he developed silicosis and other lung forms of damage. (*Id.* ¶112.)

- The "Health Hazards" section of Cambria's January 5, 2001 Material Safety Data Sheet was false and misleading because, *inter alia*, it failed to adequately disclose the risk of silicosis from inhaling dust and instruct workers how to avoid breathing silica dust, which "is ***always generated*** when" the artificial stone product is fabricated. (*Id.* ¶¶482-485 (emph. orig.).) Further, "the product is almost 100% crystalline silica and is therefore, by definition, carcinogenic to humans". (*Id.* ¶483.)

As another example, the operative complaint in *Reyes-Gonzalez v. Aaroha Radiant Marble, et al.*, No. 22STCV31907 (LA Sup. Ct.), makes allegations substantially similar to those in the *Quiroz* complaint. (Jt. RJN Ex. 85 ("*Reyes* SAC") ¶¶358-361 (claimant fabricated Cambria products and "thereby inhaled and was exposed to significant amounts of silica, metals and other toxic chemicals" and as a result he "developed silicosis and other related and consequential injuries"; identifying "Crystalline Silica" as the "toxic substance" in Cambria products), ¶¶180-187 (substantially similar allegations about Cambria's products, silica content, Material Safety Data Sheet, and Cambria officers' awareness of silicosis hazards), ¶374 (Cambria's stone products contained silica that entered the claimant's body and "was a substantial factor in causing, prolonging, and aggravating his silicosis and his related and consequential injuries.") (all emph. added).)

In another insurance coverage case concerning underlying silica injury lawsuits, *Hanover Am. Ins. Co. v. Francini, Inc.*, No. 2:23-cv-10047, 2025 WL 1090925 at *2 (C.D. Cal. Mar. 27, 2025), this Court held that the "underlying state

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

actions are all substantially similar," alleging that "underlying plaintiffs suffer from silicosis and related conditions and consequential injuries because of their exposure to silica and silica-related dust while working with underlying defendants' products" and that "[p]laintiffs allege they inhaled dust from cutting, grinding, drilling, and polishing these products as part of their work".

<div align="center">

### III.    ARGUMENT[2]

</div>

**A.    Cambria's Claims Against Navigators Fail Because Coverage For The Silica Lawsuits Is Barred By The Silica Exclusion[3]**

**1.    The Navigators Policies Have A Broad And Expansive Silica Exclusion**

The broad and expansive silica exclusion in each Navigators Policy provides that "this insurance does not apply to any liability . . . <u>arising out of</u> the actual, <u>alleged</u>, suspected or threatened <u>inhalation</u> of, <u>ingestion</u> of, <u>contact with</u>, <u>exposure to</u>, existence of, or presence of 'silica' or 'silica related dust'".  (Brady Decl. Exs. A at 10, B at 31, C at 54 (emph. added).) "Silica" is defined as "silicon dioxide, occurring in <u>crystalline</u>, amorphous or impure forms, <u>silica particles</u>, <u>silica dust</u> or <u>silica compounds</u>".  (*Id.* Exs. A at 15, B at 36, C at 58 (emph. added).)  "Silica related dust" is defined as "a <u>mixture or combination</u> of <u>silica and other dust particles</u>".  (*Id.* (emph. added).)  "Silicon dioxide" is also known as "silica".  *See Degussa Corp. v. US*, 508 F.3d 1044, 1046 (Fed. Cir. 2007); *Mauro v. Ohio Sec. Ins., Co.*, No. 21-3095, 2022 WL 10319967 at *2 n.3 (3rd Cir. Oct. 18, 2022) (expert testimony that crystalline quartz silica, silica dust, and silicon dioxide are

---

[2] As explained in the Joint Memorandum, Navigators does not concede California law applies, Minnesota law may apply because the policies were issued in Minnesota (*see* Brady Decl. Exs. A at 7, B at 28, C at 50), Navigators' Motion should be granted under California or Minnesota law, and Navigators reserves the right to raise conflict of law issues at the appropriate time.

[3] This memorandum addresses only some of the reasons, policy terms, exclusions, conditions, and applicable law relating to why Cambria is not entitled to insurance coverage for the Silica Lawsuits under the Navigators Policies. Navigators is not waiving these additional matters and if the Complaint survives (it should not), Navigators will assert them at the appropriate time.

<div align="center">

NAVIGATORS' SEPARATE MPA ISO MOTION FOR JUDGMENT ON THE PLEADINGS

</div>

<div style="writing-mode: vertical">

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

</div>

"chemically" the "same substance"). Thus, the exclusion could be read: "this insurance does not apply to any liability . . . arising out of the . . . alleged . . . inhalation of, ingestion of, contact with, [or] exposure to . . . [silicon dioxide, occurring in crystalline . . . form[], silica particles, silica dust <u>or</u> silica compounds] <u>or</u> [a mixture or combination of silica and other dust particles]." (emph. added)

### 2. The Silica Exclusion In The Navigators Policies Applies To The Silica Lawsuits To Preclude Coverage

Because the silica exclusion includes the expansive phrase "arising out of" there need only be a slight or minimal causal connection between the liability for bodily injury and the alleged inhalation, ingestion, or contact with "silica" or "silica related dust". "Arising out of" is ordinarily understood to mean "originating from, having its origin in, growing out of, or flowing from or in short, incident to, or having connection with." *Davis v. Farmers Ins. Grp.*, 134 Cal.App.4th 100, 107 (2005) (quote om.). Thus, when used in a policy exclusion, the term "arising out of" broadly excludes from coverage claims with a "'slight connection' or an 'incidental relationship' between the injury and the excluded risk." *Century Trans. Sys., Inc. v. Am. Empire Surp. Lines Ins. Co.*, 42 Cal.App.4th 121, 127 n.4 (1996). "Arising out of" policy language "broadly links a factual situation with the event creating liability, and connotes only a *minimal* causal connection or incidental relationship." *Medill v. Westport Ins. Corp.*, 143 Cal.App.4th 819, 830 (2006).

Thus, the Navigators Policies' silica exclusion applies if bodily injury allegedly arose from inhalation of, ingestion of, contact with, or exposure to "silica" or "silica related dust", even if the bodily injury was caused by non-silica components of such mixture or combination.

The bodily injuries alleged in the Silica Lawsuits for which Cambria is alleged to have liability clearly come within the scope of this exclusion. The bodily injury is alleged to be caused by exposure to and inhalation of silica.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

Exposure to and inhalation of respirable crystalline silica includes respiration or ingestion of or contact with "silica" or "silica related dust" and, therefore, coverage for these claims is precluded because they fall squarely within the silica exclusion.

Here, the complaints in the Silica Lawsuits allege that Cambria's products contained at least 93-95% silica, that inhaling dust with a high silica content is very dangerous, and that inhaling silica dust was a substantial factor in causing their silicosis, related and consequential injuries, or other silica-related diseases. (*See Quiroz* TAC ¶¶93, 95, 126-134, 163-178, 198, 210, 482-491, 1306-1307, 1323-1325, 1344-1345, 1366, 1380, 1398; *Reyes* SAC ¶¶51-52, 59, 88-99, 180-187, 374, 528; Jt. Appx. Nos. 1-2.)

As demonstrated in the Joint Memorandum and Joint Appendix: all the Silica Lawsuits allege bodily injury, including silicosis and other conditions, arising out of the inhalation of silica or silica-related dust; the underlying claimants allege they were injured by exposure to and inhalation of artificial stone dust containing respirable crystalline silica, metals, and volatile organic compounds; and there are no allegations of bodily injury that arose separately from the alleged or actual inhalation of "silica" or "silica related dust". (*See* Joint Memorandum; Jt. RJN Exs. 2-175; Jt. Appx. Nos. 1-2 (allegations re each claimant's exposure to silica dust and development of silicosis).)

The alleged presence of any non-silica components inhaled or ingested by the underlying claimants cannot defeat application of the silica exclusion. Only a "minimal causal connection or incidental relationship" with dust containing silica is required to trigger the exclusions. *Medill*, 143 Cal.App.4th at 830. Silica is an inseparable component of the dust and particles generated in the artificial stone fabrication process. (*See Quiroz* TAC ¶¶103, 111, 115, 210, 1044, 1366; *Reyes* SAC ¶181.) Thus, there is no basis to distinguish between particles released during stone fabrication or show any injury was caused by something other than silica-related dust. Cambria's Third Party Complaint does not identify factual allegations

in the Silica Lawsuits of bodily injury wholly separate from dust containing silica or silica-related diseases.

In *Hanover*, this Court recently held that insurers had no duty to defend or indemnify the insured based on a silica exclusion substantially the same as the one in the Navigators Policies.[4]  2025 WL 1090925 at *5.  In granting the insurers' motion for judgment on the pleadings based on the silica exclusion, this Court explained that "on the face of the complaints, all allegations against [the insured] specifically address the crystalline silica in [the insured's] artificial stone products," including the "insufficient warnings about exposure to crystalline silica" and the "insufficient instructions for preventing exposure to crystalline silica." *Id.* Thus, this Court found that "these allegations are all focused on the risk of silica exposure, silicosis, and injuries related to silicosis that [the insured's] products allegedly pose." *Id.*  Thus, it concluded that "[a]ll the allegations against [the insured] are specific to silica or silica-related dust."  *Id.*

In *Hanover*, this Court also rejected the insured's argument that the silica exclusion did not apply "because the underlying state actions involve allegations that *other* harmful chemicals, not just silica, caused underlying plaintiffs' injuries" and that "it remain[ed] possible that a court could find that silica 'had nothing whatsoever to do with the injuries alleged.'" *Id.* at *4 (emph. orig.)  This Court explained that "the primary injuries alleged in the underlying state actions are silicosis (which is caused by silica inhalation) and resulting complications from that lung disease—that is, silica is not alleged as merely one of many potential chemicals causing the underlying plaintiffs' injuries, but as the *main* chemical contributing to their injuries." *Id.* (emph. orig.) "Indeed, the whole of each underlying complaint is focused on the dangers of exposure to crystalline silica."

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

---

[4] The silica exclusion in *Hanover*, excluded "'bodily injuries' arising 'in whole or in part, out of the actual, alleged . . . inhalation of, or ingestion of 'silica' or 'silica-related dust'" and defined 'silica-related dust' as "a mixture or combination of silica and other dust or particles." 2025 WL 1090925 at *5.

*Id.*[5] This is also true of the Silica Lawsuits at issue here.

**B.    Cambria's Claims Against Navigators Fail Because There Is No Coverage For The Silica Lawsuits Under The Travelers Primary Policies**

Cambria's causes of action against Navigators also fail for the separate reason that there is no coverage under the underlying insurance.  Each Navigators Policy follows and incorporates the exclusions of an underlying policy numbered "CUP-6T662984" issued by Third Party Defendant Travelers Property Casualty Company of America ("Travelers") for the same policy period as the corresponding Navigators Policy.  (Brady Decl. Exs. A at 10 ("The EXCLUSIONS sections of the 'controlling underlying insurance' are made part of this policy. . . . [I]n no case will coverage be excluded by the 'controlling underlying insurance' and not excluded by this policy"), B at 31 (same), C at 53 (same); Compl. ¶23.)  Thus, if there is no coverage under the underlying Travelers policy there is likewise no coverage under the Navigators Policy.  (*Id.*; *see also Coca Cola Bottling Co v. Columbia Cas. Ins. Co.*, 11 Cal.App.4th 1176, 1183 (1992) ("Following form policies are typically written on the same terms and conditions as the coverage provided by the underlying primary coverage.")  Here, there is no coverage for Cambria's claims under the underlying Travelers policies for the reasons explained in Travelers' briefing, which are incorporated by reference herein.

**C.    Cambria's Causes of Action For Breach of Contract And Declaratory Judgment Fail**

Cambria asserts causes of action against Navigators for breach of contract and declaratory judgment, both premised on Navigators' alleged duty to indemnify Cambria for the Silica Lawsuits under the Navigators Policies.[6]  (Compl. ¶¶81-90.)

---

[5] Along the same lines, in *Mauro v. Ohio Sec. Ins.*, No. 20-3319, 2021 WL 5040265 at *2-4 (E.D. Penn. Oct. 29, 2021), *affd.* 2022 WL 10319967 (3rd Cir. Oct. 18, 2022), the court held the unambiguous "Silica or Silica Related Dust Exclusion" barred coverage for a claim arising from exposure to silica sand.

[6] Cambria's three other causes of action are not directed at Navigators and are not

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

Cambria is not entitled to any relief against Navigators because both causes of action are premised on the existence of insurance coverage for the Silica Lawsuits and such coverage is barred by the silica exclusion and by the lack of coverage under the underlying Travelers policies.  Thus, Cambria's causes of action are moot and judgment should be entered in Navigators' favor.

**D.      Navigators Is Not A Proper Party To This Action As Cambria Has Not Shown That The Underlying Limits Have Been Exhausted**

Cambria has not asserted the Navigators Policies are at issue because it has not alleged the limits of the underlying Travelers policies have been exhausted.

There is no obligation for an excess insurer to take a coverage position until the insured has shown that the underlying limits have been exhausted.  *See Qualcomm, Inc. v. Cert. Under.*, 161 Cal.App.4th 184, 196 (2008) (excess insurer's reimbursement obligation "did not arise until National actually paid the full $20 million amount of its underlying limit.") (emph. om.); *Cmty. Redev. Agency v. Aetna Cas. & Sur. Co.*, 50 Cal.App.4th 329, 339 (1996) ("It is settled under California law that an excess or secondary policy does not cover a loss … until *all* of the primary insurance has been exhausted").

Further, until the legal obligations of the underlying insurers have been determined and the excess policies have been triggered, an insured cannot sue the excess insurers for breach of contract or anticipatory breach of contract and there is no basis for declaratory relief.  *See Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504-05 (9th Cir. 1994) (insured "could not have sued the excess insurers for breach of contract until the legal obligations of the primary insurers had been determined and the excess policies had been triggered"; declaratory relief claim would be premature); *Cnty. of Santa Clara v. U.S. F&G. Co.*, 1994 WL 715657, *1-2 (N.D. Cal. Dec. 19, 1994) ("A claim for anticipatory breach against the excess insurers brought prior to the exhaustion of primary coverage would be premature for the

addressed herein.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

41054051

14

Case No. 2:25-cv-4142-MRA-MAA

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

same reasons that a pre-exhaustion declaratory relief action is premature"); *Qualcomm*, 161 Cal.App.4th at 190, 205 (since a settlement had not triggered coverage under an excess policy, insureds could not state a cause of action for breach of contract or declaratory relief).  In *Fox Paine & Co., LLC v. Twin City Fire Ins. Co.*, 104 Cal.App.5th 1034, 1053 (2024), the court explained "declaratory relief is not proper [because] the outcome of the litigation currently proceeding against Twin City is unknown. . . . So, keeping the excess insurers in the case would raise the prospect of what we described as a purely advisory opinion based on hypothetical facts or speculative future events. . . . Finally, there are sound policy reasons why the excess insurers should stay on the sidelines without incurring these unnecessary costs.  A strict exhaustion requirement brings stability and predictability to the excess insurance system, both for insurers and insureds.  [A]n excess insurer predicates the premiums it charges upon the obligations that it and the primary insurer assume . . . Thus, burdening the excess insurers with prematurely litigating coverage issues before exhaustion upsets insurers' settled expectations." (quote and cite om.).[7]

Finally, any claim for anticipatory breach of contract against Navigators would fail for the separate reason that the Navigators Policies are unilateral contracts, which are not subject of such a claim.  *See Diamond v. Univ. of So. Cal.*, 11 Cal.App.3d 49, 53-54 (1970); *Taylor v. Johnston*, 15 Cal.3d 130, 137 (1975); *Garage & Serv. St. Empl. v. P. Mut. Life Ins.,* 2 Cal.App.3d 706, 711-12 (1969); *Cobb v. Pac. Mut. Life Ins.*, 4 Cal.2d 565, 573-74 (1935).

## IV.    CONCLUSION

As explained above and in the Joint Memorandum, the Court should grant Navigators' motion, without leave to amend.

---

[7]  The *Fox Paine* Court of Appeal decision is under review by the California Supreme Court.  During review, it remains citable as persuasive authority. *Fox Paine & Co. LLC v. Twin City Fire Ins. Co.*, 559 P.3d 612 (Cal. 2024).

Dated: August 25, 2025          CLYDE & CO US LLP


By: /s/ *Brian D. Harrison*
    Alex E. Potente
    Brian D. Harrison
    David M. Rhodes

Attorneys For Third-Party Defendant
Navigators Insurance Company

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

16          Case No. 2:25-cv-4142-MRA-MAA

NAVIGATORS' SEPARATE MPA ISO MOTION FOR JUDGMENT ON THE PLEADINGS