Bryan R. Freeman, Esq. (*Pro Hac Vice forthcoming*)
bryan.freeman@maslon.com
Judah A. Druck, Esq. (*Pro Hac Vice forthcoming*)
judah.druck@maslon.com
Carmen-Marie Carballo, Esq. (*Pro Hac Vice forthcoming*)
carmen.carballo@maslon.com
**MASLON LLP**
225 South 6th Street, Suite 2900
Minneapolis, MN 55402
Tel: (612) 672-8200
Fax: (612) 642-8397

*Attorneys for Cambria*

[additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGENT INSURANCE COMPANY, GENERAL CASUALTY COMPANY OF WISCONSIN,<br><br>        Plaintiffs/Counterclaim Defendants,<br><br>    vs.<br><br>CAMBRIA ENTERPRISES, CAMBRIA ENTERPRISES LLC, CAMBRIA COMPANY LLC,<br><br>        Defendants/Counterclaim Plaintiffs.<br><br>CAMBRIA ENTERPRISES LLC and CAMBRIA COMPANY LLC,<br><br>        Third-Party Plaintiffs,<br>    vs.<br><br>THE PHOENIX INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, ZURICH AMERICAN INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, NATIONAL SURETY CORPORATION, GREAT AMERICAN INSURANCE COMPANY,<br><br>        Third-Party Defendants. | Case No.  2:25-cv-4142<br><br>**CAMBRIA'S OPPOSITION TO INSURERS' JOINT MOTIONS FOR JUDGMENT ON THE PLEADINGS**<br><br>Date: October 20, 2025<br>Time: 1:30 pm<br>Place: Courtroom 9b<br><br>[Filed concurrently herewith: Appendix in Opposition to Insurers' Motions for Judgment on the Pleadings; Oppositions to Insurers' Separate Memoranda; Opposition to Joint Request for Judicial Notice; Declaration of Judah A. Druck; [Proposed] Order] |

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

# TABLE OF CONTENTS

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

INTRODUCTION .......................................................................................................1

BACKGROUND .......................................................................................................3

A.      The Insurers Sold Cambria Products-Liability Insurance...............................3

B.      The Underlying Litigation................................................................................3

C.      The Insurers' Coverage Positions. ..................................................................4

D.      This Litigation. ................................................................................................6

ARGUMENT ............................................................................................................6

A.      Rule 12(c) Standards of Review.......................................................................6

B.      The Insurers Misconstrue the Duty to Defend. ...............................................7

C.      The Insurers Have a Duty to Defend Based on the Lawsuits' Allegations of
Bodily Injuries from VOCs. .......................................................................................9

D.      The Insurers Have a Duty to Defend Based on the Lawsuits' Allegations of
Bodily Injuries from Metals and "Other Toxic Substances"...................................12

E.      This Court's Opinion in *Francini* is Inapplicable Here. ...............................13

F.      Cambria Must Be Afforded the Reasonable Expectations of the Insurance It
Purchased, Which Should be Determined on a Fulsome Record...........................14

CONCLUSION........................................................................................................15

Case No.:
2:25-cv-4142

**CAMBRIA'S OPPOSITION TO INSURERS' JOINT MOTIONS FOR
JUDGMENT ON THE PLEADINGS**

# **TABLE OF AUTHORITIES**

PAGE(S)

Cases

*Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*,
45 Cal. App. 4th 1 (1996) ...................................................................................12

*Atl. Mut. Ins. Co. v. J. Lamb, Inc.*,
100 Cal. App. 4th 1017 (2002) ............................................................................13

*Bank of California, N. A. v. Opie*,
663 F.2d 977 (9th Cir. 1981) .................................................................................9

*Buss v. Superior Ct.*,
16 Cal. 4th 35 (1997) ..............................................................................1, 7, 10

*Dancer v. U.S.*,
2024 WL 1130958 (W.D. Mich. Mar. 15, 2024) ...........................................11, 13

*DIRECTV v. Factory Mut. Ins. Co.*,
692 F. App'x 494 (9th Cir. 2017) ..........................................................................9

*Dua v. Stillwater Ins.*,
91 Cal. App. 5th 127 (2023) ..................................................................................7

*Elvig v. Calvin Presbyterian Church*,
375 F.3d 951 (9th Cir. 2004) .................................................................................7

*Emps. Reins. Co. v. Superior Ct.*,
161 Cal. App. 4th 906 (2008) ................................................................................9

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, Inc.,
896 F.2d 1542 (9th Cir. 1989) ...............................................................................7

*Hanover American Ins. Co. v. Francini*,
2025 WL 1090925 (C.D. Cal. Mar. 27, 2025) ...............................................*passim*

*Haynes v. Farmers Ins. Exch.*,
32 Cal. 4th 1198 (2004) .......................................................................................10

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

*Health Net, Inc. v. RLI Ins. Co.*,
206 Cal. App. 4th 232 (2012) ...............................................................................13

*Horace Mann Ins. Co. v. Barbara B.*,
4 Cal. 4th 1076 (Cal. 1993) .......................................................................*passim*

*Itzhaki v. U.S. Liab. Ins. Co.*,
536 F. Supp. 3d 651 (C.D. Cal. 2021) .....................................................................7

*MacKinnon v. Truck Ins. Exch.*,
31 Cal. 4th 635 (2003) .................................................................................10, 11

*Monterra Inv., LP v. Duckett*,
2016 WL 11746281 (C.D. Cal. Oct. 20, 2016) ...............................................11, 13

*Montrose Chem. v. Superior Ct.*,
6 Cal. 4th 287 (1993) ...............................................................................................7

*Pension Tr. Fund v. Fed. Ins. Co.*,
307 F.3d 944 (9th Cir. 2002) ...................................................................................8

*Saarman Constr., Ltd. v. Ironshore Specialty Ins. Co.*,
230 F. Supp. 3d 1068 (N.D. Cal. 2017)..................................................................10

*Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*,
78 Cal. App. 4th 847 (2000) ..................................................................................10

*Webb v. Trader Joe's Co.*,
999 F.3d 1196 (9th Cir. 2021) .................................................................................7

Statutes

Cal. Civ. Proc. Code §1856(c).................................................................................9

Rules

Fed. R. Civ. P. 12(c) ................................................................................................7

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

- ii -

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

## INTRODUCTION

Cambria paid hundreds of thousands of dollars for product liability insurance to protect against lawsuits alleging bodily injury from its quartz stone products. Cambria purchased broad "duty to defend" protection as well as protection against judgments. Cambria is one of many defendants in ever-growing litigation in California courts alleging bodily-injury claims. There are currently nearly 300 underlying lawsuits, 174 of which are at issue on this motion (the "Lawsuits"). The Lawsuits allege injuries and disease on numerous theories arising from Cambria's supply of stone products containing silica, volatile organic compounds ("VOCs"), a litany of harmful metals, and catchall allegations of "other toxic substances." These Lawsuits are the very risks for which Cambria bought products liability insurance.

Despite conceding that the allegations of bodily injury fall within the policies' insuring agreements, the Insurers have nevertheless denied coverage to Cambria based on the purported applicability of silica exclusions. The Insurers are wrong. The Lawsuits expressly allege bodily injuries from a variety of compounds and materials in Cambria's manufactured stone. The Insurers have it exactly backwards in attempting reduce and generalize these allegations as excluded silica liabilities based on the purported "gravamen" of the Lawsuits. *See Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1084 (Cal. 1993) ("We look not to whether noncovered acts predominate in the third party's action, but rather to whether there is *any* potential for liability under the policy.") (emphasis original).

California law is unequivocal: if the words in a complaint create any *potentiality* for the alleged liability fitting within the product liability insurance protections then the Insurers must immediately defend the entire liability suit. *See Buss v. Superior Ct.*, 16 Cal. 4th 35, 49 (1997) ("To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not."). The underlying Lawsuits expressly allege injuries from non-silica substances, including VOCs, metals, and unspecified "other toxic

- 1 -

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

substances." VOCs are gases, and metals are distinct from silica, all of which meet the duty to defend potentiality standard as outside the scope of the Insurers' varied silica exclusions. Contrary to the Insurers' assertions, this Court's *Francini* decision is not germane to this coverage assessment. That decision was premised on different lawsuits and allegations of silica liabilities only (without VOC-injury allegations).

Under the controlling potentiality standard, the Insurers have a duty to defend Cambria against the Lawsuits. Indeed, in March of 2025, in response to correspondence from Cambria outlining the non-silica allegations in the Lawsuits, Plaintiff Regent Insurance Company ("Regent") reversed its prior denials of coverage and agreed that allegations of bodily injury from VOCs and various metals triggered Regent's duty to defend. Regent's assessment of these allegations caused Regent to confirm it would "participate in the defense of Cambria in the *Gonzalez-Quiroz* matter" and the other Lawsuits as well. (Cambria's Counterclaim ("Countercl."), ECF No. 20, ¶¶ 50, 88-90.) Regent's concession of its duty to defend speaks volumes, given that Regent adjusts claims under its policy day in and day out in the ordinary course of business. Its post-hoc rationalization that this was merely a "business decision" is simply false.

The parties should and will develop a complete record concerning: (i) the Insurers' underwriting, issuance of products-liability insurance coverage to Cambria, and the complete terms of the policies; (ii) Regent's determination it had a duty to defend; (iii) Travelers Property Casualty Company of America's ("Travelers") determination to not renew Cambria's coverage because of claim activity and expectation of high defense costs; and (iv) the underlying litigation, for which nearly 300 cases were recently coordinated for discovery. The issues presented to the Court are of vital importance to Cambria, all of the defendants and an industry which has been targeted in the Lawsuits, and should be addressed on a full and complete record. The Insurers' motions for judgment on the pleadings should be denied.

**CAMBRIA'S OPPOSITION TO INSURERS' JOINT MOTIONS FOR
JUDGMENT ON THE PLEADINGS**

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

# BACKGROUND

## A.  The Insurers Sold Cambria Products-Liability Insurance.

The Insurers sold continuous primary or excess liability insurance to Cambria for different policy periods from between 2005 and 2025. (Countercl. ¶¶ 17-18; Third Party Complaint ("TPC"), ECF No. 21, ¶ 20.) Cambria specifically purchased products-completed operations insurance limits. (Countercl. ¶ 21; TPC ¶¶ 22, 24, 27-28, 30, 36.) Cambria paid hundreds of thousands of dollars for this insurance. (Declaration of Judah A. Druck ("Druck Decl."), Ex. G.)

The products-liability insurance specifically included coverage for the risk that Cambria would be sued for alleged bodily injuries resulting from its stone products after they were manufactured and left Cambria's possession. (*See, e.g.*, ECF No. 11-2 at #721-722.) Cambria's products are quartz slabs made of silica. The Insurers understood this in accepting Cambria's premiums; the policies specifically defined Cambria's "product" to include providing or failing to provide warnings or instructions (*id.*).[1] It was clear that the Insurers promised to cover Cambria from classic products-liability claims like those faced in the slew of underlying Lawsuits.

## B.  The Underlying Litigation.

Beginning in January 2020, Cambria was sued by plaintiffs alleging bodily injuries in connection with Cambria's sale of quartz stone slabs to third parties. (Countercl. ¶ 30; TPC ¶ 45.) Since then, nearly 300 similar lawsuits have been brought against Cambria and a multitude of other non-Cambria parties, including other manufacturers, distributors and suppliers of stone products. (Countercl. ¶¶ 31-32; TPC ¶¶ 46-47; First Am. Compl., ECF No. 11-1 (listing 174 underlying actions).)

---

[1] Phoenix and Travelers' policies include silica exclusions which state that the exclusion applies "whether or not the 'bodily injury'…is included in the 'products-completed operations hazard.'" (ECF No. 80-2 at #74697.) The other Insurers (Regent, GCC, Zurich, Great American, Navigators, and National Surety) could have also stated their silica exclusions applied to Cambria's products liability coverage had that truly been what they intended. The fact they did not is evidence that they did not intend the exclusion to apply to Cambria's products-completed operations limits.

Case No.:
2:25-cv-4142

**CAMBRIA'S OPPOSITION TO INSURERS' JOINT MOTIONS FOR
JUDGMENT ON THE PLEADINGS**

All but a handful of cases are pending in California state court. (Countercl. ¶ 33; TPC ¶ 48.)

The Lawsuits allege that the plaintiffs worked at (non-Cambria) businesses that fabricated and installed stone countertop products, where they were exposed to and injured by several harmful substances. (Countercl. ¶¶ 38-39; TPC ¶¶ 53-54.) The Lawsuits have evolved over time. (TPC ¶¶ 60-61; Countercl. ¶ 46.) The earliest Lawsuits did not explicitly contain allegations of bodily injuries from exposure to VOCs and other chemicals. (*Id.*) Since late 2023 into 2024, the vast majority of the Lawsuits assert such claims, in addition to allegations of bodily injuries from exposure to silica. (*Id.*; Cambria's Appendix ("CA"), No. 2 (citing allegations).) The Lawsuits also allege bodily injuries from a host of metals. (CA, Nos. 1 & 6.) The Lawsuits allege a variety of physical injuries, including asthma, bronchiolitis, decreased lung function, and sclerosis and fibrosis, as well as injuries beyond the lungs into other organs. (*Id.*, No. 7.) The Lawsuits repeatedly allege injuries from "other toxic substances" beyond silica injuries. (*Id.*, No. 9.) The Lawsuits allege theories of negligence, failure to warn, and design defects, among others, and seek millions of dollars in alleged damages. (*Id.*, Nos. 3-5; Countercl. ¶ 40; TPC ¶ 55.)

**C.    The Insurers' Coverage Positions.**

Cambria timely tendered the Lawsuits to the Insurers. (Countercl. ¶ 42; TPC ¶ 57.) The Insurers reflexively denied coverage citing varied silica exclusions. (Countercl. ¶¶ 43-44; TPC ¶¶ 58-59.)

On March 25, 2025, Cambria's counsel sent Regent and its sister company General Casualty Company of Wisconsin ("GCC" and collectively with Regent, "QBE") a coverage letter explaining that their denial of coverage was wrongful. (Countercl. ¶¶ 45-46; Druck Decl., Ex. A.) Cambria urged Regent (as it did with the other Insurers) to reverse its denial and defend based on the Lawsuits' allegations of bodily injuries from VOCs and metals. (*Id.*) Cambria's counsel explained:

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

- 4 -

The "Coverage Position" in QBE's denial letters asserts that there is no coverage for any part of the Bodily Injury Lawsuits, and no duty to defend, because the Lawsuits include allegations that the plaintiffs "were exposed to silica and/or silica related dust" that caused bodily injury. But this simplistic analysis ignores the multitude of allegations in the underlying complaints which allege bodily injuries which do not result from silica.

To start, all of the underlying complaints allege bodily injuries from "metals" alleged to be "constituents of artificial stone, including aluminum, antimony, arsenic, chromium, copper, iron, manganese, nickel, titanium, tungsten, and vanadium" and which are alleged to "cause an immunologic lung disease…." (*See, e.g.*, Salvador Martinez Compl. ¶¶ 68-69.) Such allegations of exposure to metals are littered throughout the complaints. (*Id.* ¶¶ 10, 68, 69, 75, 76, 694, 697, 719.)

(Druck Decl., Ex. A at 4.)

Cambria argued that Regent was "ignor[ing] the Bodily Injury Lawsuits' claims of injuries" from VOCs:

For example, the *Salvador Martinez* Complaint includes all of the following allegations…which have nothing to do with silica:

- "As a direct and proximate result of their inhalation of…<u>metal fumes and vapors emitted from stone slabs</u> as they were being fabricated into stone countertops, Plaintiff, SALVADOR MARTINEZ, and Decedent, JOSE MARTINEZ-VASQUEZ, developed silicosis, pulmonary fibrosis, massive progressive fibrosis, and other pulmonary and other injuries." (¶ 11.) …

- Fabricating artificial stone also produces <u>volatile organic compounds (VOCs), the predominant species being styrene</u>…. Styrene and phthalic anhydride are respiratory irritants that cause various pulmonary effects including asthma, bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis. (*Id.* ¶ 70.)

- As a result of the exposure of Plaintiffs, SALVADOR MARTINEZ, and Decedent, JOSE MARTINEZ-VASQUEZ, to Defendants' stone products, toxins, including silica, metals, volatile organic compounds and other toxic substances, within said stone products entered their bodies." (¶ 719.)

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

- 5 -

Case No.:
2:25-cv-4142

**CAMBRIA'S OPPOSITION TO INSURERS' JOINT MOTIONS FOR JUDGMENT ON THE PLEADINGS**

(*Id.* at 4-5 (emphasis original).) Cambria also emphasized that "the experts being employed by the plaintiffs' counsel…have advanced opinions that non-silica toxins, including VOCs, injured the underlying plaintiffs." (*Id.* at 5.)

Regent responded to Cambria's letter, stating: "[W]e are taking the points made in your attached letter very seriously…" (Countercl. ¶ 49.) Later the same day, Regent sent an email "agreeing to participate in the defense of Cambria in the *Gonzalez-Quiroz* matter…." (*Id.* at ¶ 50.) Regent confirmed its decision to defend by formal letter. (*Id.* at ¶ 56.)

Regent now claims its coverage determination on its duty to defend Cambria was a "business decision." (ECF No. 1 ¶ 28.) As an insurance company handling claims in the ordinary course, Regent made the internal decision that it had a duty to defend all of the Lawsuits similarly situated to *Gonzalez-Quiroz*.[2] (Counterl. ¶ 89.)

**D.    This Litigation.**

Without notice, on May 8, 2025, Regent reversed its coverage position (again) and, together with GCC, sued Cambria. (ECF No. 1.) Cambria filed its Counterclaim against QBE on May 29, 2025, and a Third-Party Complaint against the other Insurers on May 29, 2025. (ECF Nos. 20-21.) On July 25, 2025, Cambria served initial disclosures and 104,822 pages of documents. (Druck Decl. ¶ 11, Ex. H.) Cambria also served discovery on the three primary insurers—Regent, Phoenix Insurance Company ("Phoenix"), and Zurich American Insurance Company ("Zurich"). (*Id.* at Ex. H.) On July 31, 2025, the Court set the Insurers' motion for hearing and stayed discovery. (ECF No. 74.)

## ARGUMENT

**A.    Rule 12(c) Standards of Review.**

In reviewing the Insurers' motions, the Court must accept Cambria's

---

[2] The Insurers assert that "[i]n another coverage action…plaintiffs allege that the *Quiroz* Complaint is representative." (Insurers' Mem., ECF No. 76-1, at 2 n.2.) But Cambria has not alleged that, and it is the Insurers' burden to prove that coverage is conclusively and completely excluded for each of the Lawsuits.

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

allegations as true and draw all reasonable inferences in its favor. *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir. 2004). For purposes of the Insurers' motions, the Court "must consider the complaint in its entirety, as well as other sources…, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (quotations omitted). Judgment on the pleadings is only appropriate if there is no dispute about the material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).

**B.      The Insurers Misconstrue the Duty to Defend.**

The duty to defend is a vital component of the insurance protection that Cambria bargained for when it purchased product liability coverage. The duty to defend is broader than the duty to indemnify and "runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed." *Buss*, 16 Cal. 4th at 36; *Horace Mann*, 4 Cal. 4th at 1081 ("It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity."). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose Chem. v. Superior Ct.*, 6 Cal. 4th 287, 299-300 (1993). When an insurer relies on a policy exclusion to avoid its duty to defend, the exclusion is construed narrowly. *Dua v. Stillwater Ins.*, 91 Cal. App. 5th 127, 136 (2023). It is the insurer's burden to produce "conclusive evidence proving that the exclusion applies *in all possible worlds*." *Itzhaki v. U.S. Liab. Ins. Co.*, 536 F. Supp. 3d 651, 655 (C.D. Cal. 2021) (emphasis original) (quotations omitted).

Under these legal standards, the Insurers cannot cherry-pick their way to a desired outcome by reducing the Lawsuits to their supposed "dominant" allegations. (Insurers' Mem., ECF No. 76-1, at 2, 10.) Rather, California law requires consideration of whether there are any *potentially* covered allegations. *Horace Mann*,

- 7 -

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

4 Cal. 4th at 1081; *Pension Tr. Fund v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002) ("California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty").

The Insurers seek to eliminate the potentiality analysis by arguing "the *gravamen* of the underlying claimants' allegations" is bodily injury from silica. (Insurers' Mem. at 2; *see id.* at 10 ("The *primary* injuries alleged in the underlying state actions are silicosis" and "silica is…the *main* chemical contributing to [plaintiffs'] injuries").) The Insurers' assertions are factually incorrect and contrary to the thousands of allegations of bodily injury from VOCs, other toxic chemicals, and metals that are in the Lawsuits. In addition, the Insurers' approach squarely contravenes the settled law from the California Supreme Court on the duty to defend.[3]

In *Horace Mann*, the California Supreme Court rejected the same approach now proffered by the Insurers. There, the court considered whether the insurer had a duty to defend a lawsuit that included (uncovered) claims of sexual misconduct and other allegations of non-excluded conduct. 4 Cal. 4th at 1078-81. The insurer argued that the teacher's excluded sexual misconduct was "the 'dominant factor'" (i.e., the gravamen) in the underlying case and therefore it should not have to defend. *Id.* at 1084. The California Supreme Court rejected the insurer's argument:

> The argument misconceives the role of the court in determining the duty to defend. We look not to whether noncovered acts predominate in the third party's action, but rather to whether there is *any* potential for liability under the policy.

*Id.* (emphasis original)*; see Pension Tr. Fund,* 307 F.3d at 951 ("the test is not 'whether noncovered acts predominate'") (quoting *Horace Mann*). Accordingly, the court in *Horace Mann* concluded that "[a]lthough lacking in specificity, the

---

[3] The Insurers apply California law, but purport to reserve the right to argue otherwise at some later date. (Insurers' Mem. at 6 n.4.) The outcome of these motions follows from first principles of policy interpretation and the duty to defend, irrespective of whether the law of California or a different state applies.

- 8 -

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

[underlying] complaint evinced a possibility that [the teacher] would be held liable for damages within the coverage of the policy." 4 Cal. 4th at 1084.

Here, in the same way the insurer in *Horace Mann* could not deny its duty to defend based on its view of the "dominant" allegations, the Insurers cannot summarily dismiss their duties to defend.

## C.    The Insurers Have a Duty to Defend Based on the Lawsuits' Allegations of Bodily Injuries from VOCs.

The policies that Cambria purchased must be construed according to Cambria's business. *See Bank of California, N. A. v. Opie*, 663 F.2d 977, 982 (9th Cir. 1981); *DIRECTV v. Factory Mut. Ins. Co.*, 692 F. App'x 494, 495 (9th Cir. 2017) ("[T]he law charges insurance companies with the duty of informing themselves as to the usages of the particular business insured, and a knowledge of such usage on the part of such company will be presumed."). In addition, an insurer's own determination that it owes a duty to defend is reasonable evidence of the reasonable interpretation of the insurance policy.  Cal. Civ. Proc. Code §1856(c) ("The terms set forth in a writing described in subdivision (a) may be explained or supplemented by course of dealing or usage of trade or by course of performance."); *Emps. Reins. Co. v. Superior Ct.*, 161 Cal. App. 4th 906, 920-22 (2008). Here, as alleged in the pleadings, Regent interpreted its own policy and agreed that it was obligated to defend Cambria in the underlying Lawsuits. (Countercl. ¶¶ 45-58, 89-90.)

The Insuring Agreements for the product liability insurance Cambria purchased provide that the Insurers will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, and that the Insurers have the right and duty to defend Cambria against any suit seeking those damages. (Countercl. ¶¶ 24-25; TPC ¶¶ 39-40.) There is no dispute the Lawsuits allege bodily injury claims that fall within the insuring agreements. The Insurers nonetheless argue that silica exclusions in the policies capture each and every allegation of bodily injury in the complaints and thus completely eliminate any potentiality of coverage.

Case No.:
2:25-cv-4142

**CAMBRIA'S OPPOSITION TO INSURERS' JOINT MOTIONS FOR JUDGMENT ON THE PLEADINGS**

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

Exclusions must be narrowly tailored and interpreted, with the Insurers needing to conclusively prove that their interpretation is the only reasonable one and that their exclusions clearly and unmistakably eliminate a duty to defend. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 655 (2003); *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004). Insurers cannot utilize a silica exclusion to eliminate a duty to defend for mixed actions that include allegations of silica injuries and also allegations of injuries from non-silica substances. *Saarman Constr., Ltd. v. Ironshore Specialty Ins. Co.*, 230 F. Supp. 3d 1068, 1080 (N.D. Cal. 2017) ("To the extent Ironshore relies on the language in the Mold Exclusion to evade its duty to defend mixed actions that include covered claims, that language contradicts California law.") (citing *Buss*, 16 Cal. 4th at 48).[4] Moreover, the Insurers cannot seek to enforce exclusions that would render Cambria's product insurance illusory. *See Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 874 (2000).

The vast majority of the Insurers' briefing emphasizes certain underlying allegations of bodily injuries that purportedly result from exposure to respirable crystalline silica and silicosis. (Insurers' Mem. at 2-3, 8-9.) But the Insurers concede, as they must, that the underlying allegations are not limited to injuries from silica, nor do the complaints limit the bodily injuries to respirable material. (*Id.* at 9.) The Lawsuits explicitly leave open the injury pathway of unspecified toxins entering the body in unspecified ways. (Countercl. ¶¶ 39, 46; CA, Nos. 1-2, 9.)

The Insurers' admission is crucial and outcome determinative of this motion. Allegations of bodily injuries from both silica and VOCs clearly present a "mixed-claims" scenario that triggers the Insurers' duty to defend. *See Saarman*, 230 F. Supp.

---

[4] The Insurers' silica exclusions vary in ways addressed in Cambria's insurer-specific opposition briefs. Phoenix's primary policy, for example, only uses the term "silica" and does *not* include a broader silica-related dust term, making it especially clear that allegations of injury from things that are not "silica" cannot be excluded under its policy. For Insurers whose exclusions do use "silica-related dust" or define the word "silica" to include silica mixed with dust, the policy definitions are not the same, some referring only to dust and others, dust or particles.

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

3d at 1080. The existence of other arguably uncovered silica allegations is simply not responsive to the actual duty-to-defend issue before the Court. *See Horace Mann*, 4 Cal. 4th at 1081. The only way for the Insurers to avoid the duty to defend is when the allegations conclusively and exclusively fall *entirely* within an exclusion. That is not the situation here.

As alleged, and also demonstrated in Cambria's appendix, 156 of the 174 Lawsuits include allegations of bodily injuries from VOCs. (CA, No. 2; Countercl. ¶ 46; TPC ¶ 61.) VOCs are not silica. (Countercl. ¶¶ 47-48; TPC ¶¶ 62-63.) VOCs, in contrast to silica, are gases and fumes. *See, e.g.*, *Monterra Inv., LP v. Duckett*, No. SACV131487GWRNBX, 2016 WL 11746281, at *6 n.3 (C.D. Cal. Oct. 20, 2016) ("Volatile organic compounds, sometimes referred to as VOCs, are organic compounds that easily become vapors or gases.") (quoting the U.S. National Library of Medicine); *Dancer v. U.S.*, No. 1:23-CV-580, 2024 WL 1130958, at *3 n.3 (W.D. Mich. Mar. 15, 2024) ("To be clear, VOCs are gases whereas particulate matter is not.") (quoting the U.S. Environmental Protection Agency).  Indeed, several Lawsuits expressly allege that "fumes and vapors emitted from stone slabs" caused bodily injuries. (*See* ECF No. 79-58 ¶ 11; ECF No. 79-78 ¶¶ 132-33, 134.)

Accordingly, the allegations of harm from VOCs do not come within the exclusions for silica, silica dust, or those that refer to silica in combination with dust or particles. The plain meaning of "dust" and "particle" is a small speck of solid matter. *See* Dictionary.com, www.dictionary.com/browse/dust (defining "dust" as "earth or other matter in fine, dry particles" and "a single particle or grain"); *id.*, www.dictionary.com/browse/particle (defining "particle" as "a minute portion, piece, fragment, or amount; a tiny or very small bit"); *see also MacKinnon*, 31 Cal. 4th at 649-50 (using dictionary definitions and common sense to interpret policy terms). Based on these definitions, a reasonable interpretation of the Insurers' exclusions is that it excludes coverage, at most, for injuries resulting from exposure to silica, silica dust, or tiny specks of solid matter containing silica.

Because VOCs are carbon-based gases and not solid matter, they are not dust or particles which can constitute "silica" or silica-related dust under the Insurers' exclusions. The Lawsuits allege bodily injuries from exposure to VOCs in the form of lung damage and other respiratory harm. (CA, No. 7.) Such allegations raise a potential for coverage triggering Insurers' duties to defend.

**D.     The Insurers Have a Duty to Defend Based on the Lawsuits' Allegations of Bodily Injuries from Metals and "Other Toxic Substances."**

Separate from and in addition to alleged injuries from VOCs, the underlying Lawsuits allege injuries from exposure to metals within, and metal fumes emitted from, Cambria's quartz products. (CA, No. 1.) The allegations of repeated, discrete lung injuries—facts inherent in the allegation that the plaintiffs developed fibrosis—trigger the Insurers' duty to defend, as their policies do not define "bodily injury" solely in terms of a final or ultimate disease. (Countercl. ¶ 27 ("bodily injury" defined to include "bodily injury, sickness or disease sustained by a person"); TPC ¶¶ 42 (same).) Each discrete bodily and cellular injury gives rise to a potential for coverage. *See Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 2, 43 (1996) (recognizing, based on medical evidence, that bodily injury and damage to lung tissue occurs at the cellular level).

The Lawsuits allege that in fabricating, cutting, drilling, grinding, polishing, and installing the quartz products of Cambria and other defendants, the plaintiffs inhaled metal particles which damaged and scarred their lung tissue and led to pulmonary fibrosis. (CA, No. 6.) The plaintiffs' bodies were allegedly injured every time a speck of metal came into contact with lung tissue. (*Id.*)

Thus, to eliminate their duties to defend, the Insurers would have to conclusively prove that every single discrete bodily injury allegedly experienced by each plaintiff over years (sometimes decades) of work arose solely from exposure to silica or silica-related dust, and that *none* of the plaintiffs sustained bodily and cellular injuries from metals (or VOCs) or other agents of alleged harm. *See Health*

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

*Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 263 (2012) (holding it is the insurer's burden to prove that an exclusion "completely" bars coverage for all alleged injury). The Insurers have not carried, and cannot carry, their burden to prove through conclusive evidence that their silica exclusions "appl[y] in all possible worlds." *Atl. Mut. Ins. Co. v. J. Lamb, Inc*., 100 Cal. App. 4th 1017, 1039 (2002).

**E.     This Court's Opinion in *Francini* is Inapplicable Here.**

As demonstrated in Section C above, and as expressly alleged by Cambria, the Lawsuits at issue include different allegations of bodily injuries from VOCs that were not considered in *Francini*. (TPC ¶¶ 60-61; Countercl. ¶ 46.) VOCs are not silica. (Countercl. ¶¶ 47-48; TPC ¶¶ 62-63.) They are gases, not dust. *See Monterra*, 2016 WL 11746281, at *6 n.3; *Dancer* v, 2024 WL 1130958, at *3 n.3.

This Court's March 2025 opinion in *Hanover American Ins. Co. v. Francini, Inc.* acknowledges that where there are non-silica allegations, an insurer's duty to defend is triggered. No. 2:23-cv-10047-MRA-MAA, 2025 WL 1090925, at *4 (C.D. Cal. Mar. 27, 2025). The Insurers ignore this reality and instead argue "[t]he same facts are at issue here and the Court should reach the same conclusion" as in *Francini*. (Insurers' Mem. at 3, 10-11.)

*Francini*, however, did *not* involve the same facts. The Court did not address VOC allegations in the decision. Indeed, the underlying complaint discussed by the Court in *Francini—Estrella-Moreno, et al. v. All Natural Stone, et al.*, No. CGC-23-605643—was filed in 2023 and did not include any allegations of injuries from VOCs or other non-silica chemicals. (ECF No. 79-27.) And the complaint in *Estrella Moreno* is simply not the "same" as, or representative of, the Lawsuits now at issue on the Insurers' motions.

Notably, in *Francini*, the Court acknowledged Judge Guilford's decision in *American Zurich*, which rejected the insurer's attempt to avoid its duty to defend claims based on a silica exclusion because "the complaint in the underlying action [in *American Zurich*] alleged injuries from other substances in addition to silica,"

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

**CAMBRIA'S OPPOSITION TO INSURERS' JOINT MOTIONS FOR
JUDGMENT ON THE PLEADINGS**

including based on exposure to "aromatic solvents, aliphatic solvents, naphthenic solvents, chlorinated solvents, other organic solvents, silica, and other toxic chemicals." *Francini*, 2025 WL 1090925, at *4. On that basis, the Court concluded "the silica exclusion in the insurance policies [litigated in *American Zurich*] did not absolve the insurance company of its duty to defend…." *Id.*

Here, like in *American Zurich* and unlike in *Francini,* the Lawsuits *do* allege injuries "from other substances in addition to silica." The Court should follow the reasoning in *American Zurich*: "In short, interpreting the exclusion narrowly against Liberty, the *fact that silica is involved in a lawsuit cannot negate any possibility of coverage sufficient to relieve Liberty of a duty to defend*." *Id.* at *6 (emphasis added).

**F.    Cambria Must Be Afforded the Reasonable Expectations of the Insurance It Purchased, Which Should be Determined on a Fulsome Record.**

For 20 years, Cambria purchased hundreds of millions of dollars in products-liability insurance limits, separate and apart from general liability coverage limits for Cambria's on-premises risks. (Countercl. ¶¶ 21-22; TPC ¶¶ 22, 24, 27-28, 30, 33, 36.) The Insurers charged, and Cambria paid, specific and separately assessed premiums, ostensibly because the Insurers had promised to insure Cambria for products-completed operations risks—meaning the risks that Cambria would be sued for alleged injuries resulting from Cambria's quartz products after they were manufactured and left Cambria's possession. (*Id.*; *see* Druck Decl., Ex. G.) As an example, for each year between 2013 and 2016, Phoenix charged Cambria more than twice as much in premium for products-liability coverage ($42,350) as compared to premises general liability coverage ($20,174). (ECF Nos. 80-2 at #74642, 80-3 at #75007, 80-4 at #75433.) But Phoenix, like all other Insurers, now wants to interpret its policies to effectively eviscerate the products-liability coverage it promised. It argues that the silica exclusions preclude coverage for any "bodily injury…arising out of or *in any way related to* the actual, alleged, or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

respiration of silica *or products or substances containing silica.*" (Travelers' Mem., ECF No. 80, at 7-9.) As the Insurers know, the heart of Cambria's business is the manufacture and sale of quartz slabs, which contain silica. Under Phoenix's over-reaching interpretation, Cambria's premium for products-completed operations coverage should have been *$0.00* because *any* claim would relate to Cambria's silica-containing products. Cambria cannot now be stripped of the value of its insurance.

There is also important evidence regarding the admissions of Regent and Travelers. While Regent now, in hindsight, casts its decision to defend Cambria as a "business decision," that is false. (Countercl. ¶¶ 45-62, 89-91.) Cambria surely has the right to contest Regent's attempt to explain away its decision made in the ordinary course of its insurance business—decisions that Regent makes hundreds of times each month. Cambria should have the ability to discover and utilize evidence regarding Regent's internal decision making. The same goes for Travelers, which cancelled Cambria's insurance "due to claim activity" in 2025 because "even with proper exclusions, high defense costs are expected." (TPC ¶¶ 93-99; Druck Decl., Ex. F.) In other words, Travelers expected there would be a duty to defend the Lawsuits. (*Id.*) Cambria should not be foreclosed from discovering such evidence.

## CONCLUSION

The Insurers' motion for judgment on the pleadings should be denied.

Dated:  September 22, 2025

Respectfully submitted,

By:  *s/ Judah A. Druck*

Maslon LLP
Bryan Freeman, Esq. (PHV)
Judah Druck, Esq. (PHV)

Saxe Doernberger & Vita, P.C.
William S. Bennett, Esq.
Kyle A. Rudolph, Esq.

**Attorneys for Cambria**

MASLON LLP
225 SOUTH SIXTH STREET, SUITE 2900
MINNEAPOLIS, MN 55402

Case No.:
2:25-cv-4142

**CAMBRIA'S OPPOSITION TO INSURERS' JOINT MOTIONS FOR JUDGMENT ON THE PLEADINGS**