UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:**     **(IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [76]**

Before the Court is the Defendants' Motion for Judgment on the Pleadings. ECF 76. The Court read and considered the moving, opposing, and reply papers and held a hearing on the Motion on November 24, 2025. For the reasons stated herein, the Court **GRANTS in part** and **DENIES in part** the Motion.

## I.     BACKGROUND

This is an insurance coverage dispute arising out of personal injury claims brought by stoneworkers against various manufacturers and distributors of artificial stone products. Plaintiffs Regent Insurance Company ("Regent Insurance") and General Casualty Company of Wisconsin ("General Casualty") (collectively, "Plaintiffs" or "Regent") filed this action against Cambria, Cambria Enterprises LLC, and Cambria Company LLC (collectively, "Cambria"), seeking a declaratory judgment that they owe no coverage or defense to Cambria for more than 174 underlying personal injury actions (the "Underlying Actions"). ECF 11. Cambria filed a Counterclaim against Regent and a Third-Party Complaint against The Phoenix Insurance Company ("Phoenix"), Travelers Property Casualty Company of America ("Travelers Property") (collectively with Phoenix, "Travelers"), Zurich American Insurance Company ("Zurich"), Navigators Insurance Company ("Navigators"), National Surety Corporation ("National Surety"), and Great American Insurance Company ("Great American"). ECF 21. Regents, Travelers, Zurich, Navigators, National Surety, and Great American are collectively referred to herein as the "Insurers."

In the Underlying Actions, the plaintiffs (the "Underlying Plaintiffs") allege that Cambria's product contained hazardous substances including respirable crystalline silica, as well as metals and volatile organic compounds, which caused injuries including silicosis and other medical conditions. The thrust of Regent's Complaint and the Insurers' instant Motion is that coverage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

under the insurance policies issued by the Insurers to Cambria is precluded by the "Silica Exclusion" contained in the policies.

### A.    The Underlying Actions

One such Underlying Action was filed by Cesar Manuel Gonzalez Quiroz.  Mr. Quiroz's complaint includes the following allegations relevant to the instant Motion:

- "All stone products contain crystalline silica in varying concentrations from the lowest concentration of about 3-5% in marble to about 93-95% in traditional artificial stone."  ECF 79-2 ¶ 93.

- The fabrication of stone products "produces large amounts of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic silicosis as well as lung cancer and various other silica-related diseases."  *Id.* ¶ 95.

- Fabrication workers "are not only exposed to high concentrations of respirable crystalline silica, but are also exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders."  *Id.* ¶ 96.

- "In addition to crystalline silica, pulmonary fibrosis (scarring of the lung tissue) is caused by many metals that are constituents of artificial stone, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium."  *Id.* ¶ 97.

- "Fabricating artificial stone products also produces volatile organic compounds (VOCs), the predominant species being styrene, but also including phthalic anhydride, benzene, ethylbenzene, and toluene.  Styrene and phthalic anhydride are respiratory irritants that cause various pulmonary effects including asthma, bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis." *Id.* ¶ 98.

- "Throughout the course of his work" as a stone cutter, Mr. Quiroz "worked with inherently hazardous stone products manufactured, imported, supplied, distributed, contracted, and/or brokered, by [Cambria].  [Mr. Quiroz] was thereby exposed to and inhaled stone dust containing silica and other toxins and carcinogens, as well as artificial stone dust containing respirable crystalline silica (including quartz and cristobalite), metals . . . and volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene) emitted from these products)."  *Id.* ¶ 111.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

- "As a direct and proximate result of his exposure to silica, metals and other toxins within said stone products . . . [Mr. Quiroz] developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma)." *Id.* ¶ 112.

- "At no time did [Mr. Quiroz] personally ascertain any ingredients or contaminants of the stone products to which he was exposed in the course of his work that caused his lung disease; [Mr. Quiroz] personally remains ignorant of the identity of those hazardous substances to which he was exposed at work that caused his lung disease." *Id.* ¶ 119.

- "As a result of [Mr. Quiroz's] exposure to each of Defendants' stone products, silica, metals and other toxins entered [Mr. Quiroz's] body and caused Plaintiff to suffer from specific illnesses, to wit, silicosis and related medical conditions, as set forth in more detail herein." *Id.* ¶ 1306.

- "Each of Defendants' stone products contained silica and toxic metals, that entered [Mr. Quiroz's] body and was a substantial factor in causing, prolonging, and aggravating his silicosis and his related and consequential injuries." *Id.* ¶ 1325.

The Insurers refer to Mr. Quiroz's complaint as representative of the Underlying Actions. ECF 76-1 at 6.

### B.     The Policies and Exclusions

The Insurers are insurance companies that issued one or more primary or excess/umbrella commercial liability insurance policies to Cambria or one of the other Plaintiffs between 2013 and 2025 (the "Policies").   ECF 21 ¶ 20.

#### 1.     *Regent Insurance Primary Policies and Exclusions*

Regent Insurance issued 10 general liability primary policies to insure Cambria between 2005 and 2014.   ECF 11 ¶ 14.   Each of the primary policies issued by Regent Insurance contain the following exclusion (the "Regent Silica Exclusion"):

This insurance does not apply to . . . "bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

or 'silica-related dust.' . . . . 'Silica' means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds. . . . 'Silica-related dust' means a mixture or combination of silica and other dust or particles.

ECF 11-2 at 156; ECF 11-4 at 170; ECF 11-6 at 28; ECF 11-8 at 92; ECF 11-10 at 129; ECF 11-12 at 29; ECF 11-14 at 116; ECF 11-16 at 29; ECF 11-18 at 29; ECF 11-20 at 29.

### 2.    *Phoenix Primary Policies and Exclusions*

Phoenix issued three primary policies to insure Cambria between 2013 and 2016.  *Id.* ¶ 21. Each of the primary policies issued by Phoenix contain the following exclusion (the "Phoenix Silica Exclusion"):

This insurance does not apply to 'bodily injury' . . . arising out of or in any way related to the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of silica or products or substances containing silica.

ECF 80-2 at 195; ECF 80-3 at 207; ECF 80-4 at 220.

### 3.    *Zurich Primary Policies and Exclusions*

Zurich issued 10 primary policies to insure Cambria between 2016 and 2025.  ECF 21 ¶ 26.  Each of the primary policies issued by Zurich contain the following exclusion (the "Zurich Silica Exclusion"):

This insurance does not apply to . . . "bodily injury" . . . caused directly or indirectly, in whole or in part, by the actual, alleged or threatened inhalation, ingestion, absorption, exposure to, existence of or presence of 'silica' . . . . 'Silica' means: (1) Any form of crystalline or non-crystalline (amorphous) silica, silica particles, silica compounds, silica dust or silica mixed or combined with dust or other particles; or (2) Synthetic silica, including precipitated silica, silica gel, pyrogenic or fumed silica or silica-flour.

ECF 83-2 at 39; ECF 83-3 at 41; ECF 83-4 at 36; ECF 83-5 at 36; ECF 83-6 at 40; ECF 83-7 at 51; ECF 83-8 at 51; ECF 83-9 at 53; ECF 83-10 at 42; ECF 83-12 at 24; ECF 83-15 at 1.

### 4.    *Travelers Property Umbrella Policies and Exclusiosn*

Travelers Property issued eight "Commercial Excess Liability (Umbrella) policies" to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

insure Cambria between 2013 and 2025.   ECF 21 ¶ 23.

The three umbrella policies issued by Travelers Property between 2013 and 2016 include the following silica exclusion ("Travelers Property Silica Exclusion I"):

This insurance does not apply to "bodily injury" . . . arising out of or in any way related to the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of silica or products or substances containing silica.

ECF 80-5 at 43; ECF 80-6 at 40; ECF 80-7 at 41.

The umbrella policy issued by Travelers Property in 2016 includes the following silica exclusion ("Travelers Property Silica Exclusion II"):

This insurance does not apply to:

1. Bodily Injury . . . out of any actual, alleged or threatened: a. absorption, ingestion or inhalation of silica in any form by any person; or b. existence of silica in any form.

2. Bodily Injury . . . arising out of any actual, alleged or threatened:

a. absorption, ingestion, or inhalation of any other solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and Waste, in any form by any person; or

b. existence of any such other irritant or contaminant in any form;

and that are part of any Claim or Suit that also alleges any Bodily Injury, Property Damage, Personal Injury or Advertising Injury described in paragraph 1 of this exclusion above.

ECF 80-8 at 45.

The four umbrella policies issued by Travelers Property in 2017, 2022, 2023, and 2024 include yet a different silica exclusion ("Travelers Property Silica Exclusion III"), which excludes from coverage:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

a. Damages arising out of the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of 'silica' or 'silica-related dust.'

b. Damages arising out of the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of any other solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste, and that is part of any claim or 'suit' which also alleges any damages described in Paragraph a. of this exclusion . . . .

"Silica" means silica dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

"Silica-related dust" means a mixture or combination of 'silica' and other dust or particles.

ECF 80-9 at 53; ECF 80-10 at 52; ECF 80-11 at 56; ECF 80-12 at 57.

**5.      *Great American Umbrella Policies and Exclusions***

Great American issued four "'Protector' Commercial Umbrella policies" to insure Cambria between 2018 and 2022.   ECF 21 ¶ 35.   Each of the primary policies issued by Great American contain the following silica exclusion (the "Great American Silica Exclusion") which excludes from coverage:

Any and all liability of any nature . . . arising out of, caused by, resulting from, contributed to, aggravated by or related in any way, either directly or indirectly, and either in whole or in part, to . . . [a]ny actual, alleged or threatened exposure to, existence of, presence of, ingestion of, inhalation of or contact with "silica" or dust that includes or contains "silica," whether or not occurring alone, in combination with, before, after, or concurrently with any other cause, contributing condition or circumstance, or aggravating factor, whether manmade, natural, or any combination of manmade or natural. . . . "Silica" means silicon dioxide ($SiO_2$) in any form, from any source.

ECF 81-2 at 39; ECF 81-3 at 41; ECF 81-4 at 43; ECF 81-5 at 42.

**6.      *General Casualty Umbrella Policies and Exclusions***

General Casualty issued 10 umbrella/excess policies to insure Cambria between 2005 and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

2014. ECF 11 ¶ 14. Each of the primary policies issued by General Casualty contain the following exclusion (the "General Casualty Silica Exclusion"):

> This insurance does not apply to . . . [a]ny liability of the insured arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust." . . . . "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds. . . . . "Silica-related dust" means a mixture or combination of silica and other dust or particles.

ECF 11-3 at 40; ECF 11-5 at 40; ECF 11-7 at 55; ECF 11-9 at 55; ECF 11-11 at 34; ECF 11-13 at 37; ECF 11-15 at 37; ECF 11-17 at 38; ECF 11-19 at 38; ECF 11-21 at 38.

### 7. *Navigators Excess Policies and Exclusions*

Navigators issued three excess liability policies to insure Cambria between 2022 and 2025. ECF 21 ¶ 29. The Navigators excess policies provide that "[t]he exclusions of the 'controlling underlying insurance' are made part of this policy." ECF 77-2 at 6. The Navigators policies further state that "[i]f an inconsistency or contradiction exists between an Exclusion of this policy and an exclusion of the 'controlling underlying insurance' the Exclusion of this policy will apply. However, in no case will coverage be excluded by the 'controlling underlying insurance' and not excluded by this policy." *Id.*

The Navigators policies include their own exclusions concerning silica ("Navigators Silica Exclusion"), which provide:

> This insurance does not apply to any liability . . . arising out of the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of "silica" or "silica related dust."

ECF 77-2 at 6; ECF 77-3 at 6; ECF 77-4 at 6.

### 8. *National Surety Excess Policies and Exclusions*

National Surety issued two excess liability policies to insure Cambria between 2016 and 2018. ECF 21 ¶ 32. Each of the excess policies issued by National Surety identify Travelers Property as the carrier of the first underlying insurance. ECF 78-2 at 7; ECF 78-3 at 7. The National Surety policies state that "[t]he terms and conditions of the First Underlying Insurance policy in effect at the inception date of this policy apply to this policy unless they are inconsistent with any provision of this policy . . . ." ECF 78-2 at 22; ECF 78-3 at 22. The National Surety

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

policies further state that "[i]f any Underlying Insurance does not pay damages, for reasons other than exhaustion of an aggregate limit of insurance, then we shall not pay such damages." ECF 78-2 at 22.

The National Surety policies also include their own exclusions concerning silica ("National Surety Silica Exclusion"), which provide:

This policy does not apply to any claim or liability arising, in whole or in part, directly or indirectly out of, or which is in any way related to, 'silica.'  As used in this exclusion, the term 'silica' includes, but is not limited to, silicon dioxide, silica, silica products, silica fibers, silica dust, any other silica byproducts, and silica, whether alone or in combination with any substance, product, or material.

ECF 78-2 at 12; ECF 78-3 at 12.

### C.     Procedural History

Regent filed its First Amended Complaint against Cambria on May 16, 2025.  ECF 11. Cambria answered and filed its counterclaims against Regent and third-party complaint against the remaining Insurers on May 29, 2025.  ECF 20, 21.

On August 25, 2025, the Insurers filed a joint Motion for Judgment on the Pleadings ("Motion").  ECF 76.  Each Insurer also filed a separate memorandum in support of the Motion, describing its specific policies and the exclusions therein.  ECF 77 (Navigators Memorandum); ECF 78 (National Surety Memorandum); ECF 81 (Great American Memorandum); ECF 80 (Travelers Memorandum); ECF 82 (Regent Memorandum); ECF 83 (Zurich Memorandum). Cambria opposed the joint Motion, ECF 86, and each Insurer's individual memorandum, ECF 87, 88, 89, 90.

Multiple Insurers filed Notices of Related Cases, indicating that this action concerns the same Underlying Actions and policy exclusions as those at issue in *Hanover American Insurance Co. et al. v. Francini, Inc.*, No. 2:23-cv-10047-MRA-MAA ("*Hanover*").  ECF 12, 18.  Cambria objected to those Notices.  ECF 19, 22.  This action was transferred to the undersigned judge pursuant to General Order 24-04.  ECF 26.  Several additional coverage actions were filed by other insurance providers and stone companies concerning the same Underlying Actions and similar silica and pollution policy exclusions, each of which were also noticed as related to *Hanover* and transferred to the undersigned judge.  *Pacific Shore Stones, LLC et al. v. Allied Property and Casualty Co. et al.* No. 2:25-cv-04370-MRA-MAA (C.D. Cal. May 14, 2025)**;** *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company et al.*, No. 2:25-cv-03895-MRA-MAA (C.D. Cal. May 1, 2025); *Regent Insurance Company et al. v. Stone Source LLC*, No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

2:25-cv-06702-MRA-MAA (C.D. Cal. July 22, 2025).   The insurers filed motions for judgment on the pleadings in every action, including the instant action, and four of the motions were heard on November 24, 2025.   ECF 107.

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."   Fed. R. Civ. P. 12(c).   Motions for judgment on the pleadings are "functionally identical to Rule 12(b)(6) motions."   *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)) (internal quotation marks omitted).   Therefore, "when ruling on either type of motion 'courts must consider the complaint in its entirety, as well as other sources . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"   *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

On a motion for judgment on the pleadings, "[j]udgment is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."   *San Francisco Taxi Coal. v. City & Cnty. of San Francisco*, 979 F.3d 1220, 1223 (9th Cir. 2020).   "A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery."   *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).   "Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings."   *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368 (1969)).

## III.   DISCUSSION

### A.   Request for Judicial Notice

The Insurers ask the Court to take judicial notice of the underlying complaints against Cambria.   ECF 79 at 5.   Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."   Fed. R. Evid. 201.   Courts "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts."   *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citations omitted).   Cambria does not oppose.   ECF 91.   The Court therefore takes judicial notice of the underlying complaints identified in the Insurers' request for judicial notice.

The Insurers also ask the Court to take judicial notice of the certified copies of their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

respective policies issued to Cambria.  ECF 79 at 2–5.  Cambria argues that the Court may not consider the Policy Documents because "issues remain regarding whether the Insurers have submitted complete and accurate policies."  ECF 91 at 2.  According to Cambria, its Answer did not admit the accuracy of the Policies submitted by Regent.  *Id.* (citing ECF 20 ¶ 15).  Cambria also contends that the certifications are not properly authenticated by a person with sufficient foundation.  ECF 91 at 2.

The Court concludes that the Insurers have sufficiently authenticated their respective Policy documents, and Cambria's conclusory allegations that the policies may be incomplete or inaccurate do not preclude the Court from considering them.  In ruling on the Insurers' Motion for Judgment on the Pleadings, the Court may consider documents incorporated by reference into the pleadings "if the plaintiff extensively refers to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).  Regent's First Amended Complaint and Cambria's Third-Party Complaint refer to the specific policies issued by each Defendant by policy number and date of coverage.  *See* ECF 11, 21.  The gravamen of this dispute is whether said policies provide coverage in the Underlying Actions.  Thus, it is appropriate for the Court to take judicial notice of the policies which are incorporated by reference.  *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n.1 (9th Cir. 2009) ("A court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint.").  Moreover, considering these documents does not convert the Motion to a motion for summary judgment.  *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (recognizing that in ruling on 12(c) motion, court can consider documents incorporated into the complaint by reference).

As to Cambria's assertion that the certifications were not provided by a person with sufficient foundation, Federal Rule 901(b)(1) provides that a witness with knowledge of a document can authenticate it by testifying that it is "what it is claimed to be."  *United States v. Estrada-Eliverio*, 583 F.3d 669, 672 (9th Cir. 2009).  "[Rule] 901 does not require personal knowledge of a document's creation, but rather only personal knowledge that a document was part of an official file."  *Id.* at 673.  Thus, a document is sufficiently authenticated if a declarant attests that the documents "where what [they were] claimed to be, namely, accurate copies of documents he personally knew were from" a file.  *Id.*; *see also Burden v. Bar Louie Anaheim, Inc.*, No. SACV 15-0638 AG (E), 2016 WL 551993 (C.D. Cal. Feb. 10, 2016) (declaration stating that exhibits were "true and correct copies of the documentation," and that declarant is "duly authorized and qualified" to certify their authenticity was sufficient to authenticate the documents).

Here, each declaration used to authenticate the Insurers' Policies stated, at a minimum, that the declarant was familiar with claims and policies, and that the documents attached were true and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

correct certified copies of the policies.   Cambria alleges in conclusory fashion that the documents are incomplete or lack foundation, but that is insufficient to call into question the authenticity of these documents.   The Court therefore **GRANTS** the Insurers' request to take judicial notice of the Policy Documents.

###    B.    Insurance Coverage Principles

"A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993) (cleaned up).   A "carrier must defend a suit which [p]otentially seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966).   "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded," or in an action where damages arise from an injury that is ultimately determined to fall outside the scope of the policy or within an exclusion.   *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993); *see also Saylin v. California Ins. Guarantee Assn.*, 179 Cal. App. 3d 256, 263 (1986) ("[T]he duty [to defend] may exist even where coverage is in doubt and ultimately does not develop." (internal quotation marks omitted)).

The duty to defend is triggered by a "bare 'potential' or 'possibility' of coverage." *Montrose*, 6 Cal. 4th at 300.   To prevail in an action seeking declaratory relief on the issue of the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." *Id.*   "The duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002).   "Thus, even where . . . the allegations in the underlying complaint are primarily focused on non-covered claims, the Court 'look[s] not to whether noncovered acts predominate in the third party's action, but rather to whether there is any potential for liability under the policy.'" *KM Strategic Mgmt., LLC v. Am. Cas. Co. of Reading PA*, 156 F. Supp. 3d 1154, 1168 (C.D. Cal. 2015) (quoting *Horace Mann*, 4 Cal. 4th at 1084).

"The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann*, 4 Cal. 4th at 1081.   "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Id.* (citing *Gray*, 65 Cal. 2d at 276).   Stated differently, "facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy." *Montrose*, 6 Cal. 4th at 296 (citing *Gray*, 65 Cal. 2d at 276).   On the other hand, "the insured may not speculate about unpled third party claims to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

manufacture coverage." *Albert v. Mid-Century Ins. Co.*, 236 Cal. App. 4th 1281, 1290 (2015) (quotation marks omitted); *The Upper Deck Co. v. Fed. Ins. Co.*, 358 F.3d 608, 616 (9th Cir. 2004)). "The possibility of an amendment does not require the insurer to speculate about any conceivable claim that a plaintiff might bring against the insured or to spin out wild theories of recovery for every conceivable damage." *The Upper Deck Co.*, 358 F.3d at 616.

In a "mixed" action, in which some of the claims are at least potentially covered and the others are not, the insurer has a duty to defend the action in its entirety. *Buss v. Superior Ct.*, 16 Cal. 4th 35, 48 (1997).

### C.    The Silica Exclusions

Each Insurer argues that the silica exclusion in their respective policies preclude coverage for the Underlying Actions.

As the background section above reflects, the wording of the silica exclusions differs from policy to policy. *Supra* Section I.B. In some instances, these differences are material to the resolution of the issue whether the Insurer owes Cambria a duty to defend or indemnify in the Underlying Actions.

The Court below groups the exclusions together based on their relative breadth. The first, most narrow category of exclusions preclude from coverage bodily injuries that arise out of (in whole or in part), or are related to, silica or silica-related dust. The Regent Silica Exclusion, General Casualty Silica Exclusion, Zurich Silica Exclusion, Great American Exclusion, and Navigators Silica Exclusion fall within this category.

The second, broader category of silica exclusions preclude from coverage bodily injuries that arise out of *products* containing silica (regardless of whether the injury itself arises from silica). The Phoenix Silica Exclusions, Travelers Property Silica Exclusion I, and National Surety Silica Exclusion fall within this category.

The third category precludes from coverage claims which are part of a suit alleging injuries arising in whole or in part out of silica or silica-related dust. The Travelers Property Silica Exclusions II and III fall within this category.

#### 1.    *The "Arising Out of Silica" Exclusions (Regent, Zurich, Great American, General Casualty, and Navigators)*

The Silica Exclusions in this category generally bar from coverage any bodily injury "arising, in whole or in part" out of silica or silica-related dust. Although the precise wording

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

varies among the policies, they are similar in all material respects because they each focus on the substance causing the injury and apply only when the injury arises, in whole or in part, directly or indirectly, from silica or a mixture of dust or particles containing silica. Thus, in considering the Motion as to the Insurers with this form of exclusion (Regent, General Casualty, Zurich, Great American, and Navigators), the Court must consider whether there is a possibility that the Underlying Actions involve bodily injuries that do not "arise from" silica or silica-related dust. The Court answers this question by looking at the Underlying Plaintiffs' allegations, as well as facts extrinsic to the complaints. *See Montrose*, 6 Cal. 4th at 295; *Gray*, 65 Cal. 2d at 276. If such a possibility exists, then the Insurers owe a duty to defend, regardless of whether the underlying injuries were predominantly, primarily, or substantially caused by silica or silica-related dust. *See KM Strategic Mgmt.*, 156 F. Supp. 3d at 1168.

It is undisputed that the Underlying Plaintiffs allege that they were "not only exposed to high concentrations of respirable crystalline silica, but [were] also exposed to other toxic substances in artificial stone," including many metals and VOCs which can cause pulmonary fibrosis and other pulmonary effects. ECF 79-2 ¶¶ 96–97. Moreover, it appears undisputed that such metals or VOCs do not meet the Policies' definition of "silica," and that because VOCs are gases, they would not meet the Policies' definition of "silica-related dust." ECF 86 at 15; *see, e.g.*, ECF 11-3 at 40 (defining silica-related dust as a "mixture or combination of silica and other *dust* or *particles*" (emphasis added)). And finally, it is undisputed that the Underlying Plaintiffs allege these non-silica substances contributed to their injuries. ECF 79-2 ¶ 1306 ("As a result of [Mr. Quiroz's] exposure to each of Defendants' stone products, silica, metals and other toxins entered [Mr. Quiroz's] body and caused [Mr. Quiroz] to suffer from specific illnesses."). In other words, there is no dispute that the Underlying Plaintiffs allege that they were exposed to toxic substances that are neither silica nor silica-related dust (and thus covered under the Policies) and that those substances contributed to their injuries.

The question remains, however, whether the Silica Exclusion bars coverage for those injuries where the Underlying Plaintiffs allege that silica and silica-related dust *also* contributed to those injuries. The Court concludes it does not.

Critically, each Underlying Plaintiff alleges that they "remain[] ignorant of the identity of those hazardous substances to which [they] were exposed at work that caused [their] lung disease." ECF 79-2 ¶ 116. The Underlying Plaintiffs allege that various toxic substances (generally speaking, silica, metals, and VOCs) can independently cause the lung injuries they suffer from, including lung disease and/or pulmonary fibrosis. *Id.* ¶¶ 83–84. But among these different substances, any individual Underlying Plaintiff does not know which precise substance caused their precise injuries. Given these allegations in the Underlying Actions, it is possible that toxic substances *other* than silica or silica-related dust were the sole cause of the pulmonary fibrosis or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

lung disease suffered by the Underlying Plaintiffs.  In other words, the Underlying Actions present the possibility that the Underlying Plaintiffs' injuries were not caused by silica or silica-related dust at all—whether that possibility is remote or unlikely is irrelevant.

Ultimately, it is the Insurers' burden to show that the Silica Exclusion applies—*i.e.*, to show that the injuries alleged in the Underlying Actions *do* arise in whole or in part out of the alleged inhalation of silica or silica-related dust.  *See ML Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal. App. 4th 137, 141 (2000) ("When it comes to exclusions, the insurer bears the burden of proving the exclusion applies.").  Given the scientific and fact-intensive nature of the injuries alleged, the Insurers cannot meet this burden at the present stage.

The Court acknowledges that it reached a different conclusion in its prior order granting the insurers' motion for judgment on the pleadings in *Hanover*.  The Court has revisited its decision in that case, and with the benefit of additional briefing and argument from counsel, the Court recognizes that its first order in *Hanover* characterized silica as the "primary" or "main" cause of the Underlying Plaintiffs' injuries.  *See Hanover*, ECF 66 at 8.  But whether silica "predominates" in the  Underlying Actions' complaints is irrelevant to whether the Silica Exclusion precludes coverage.  *See Horace Mann*, 4 Cal. 4th at 1084.  The dispositive question as to the Insurers' Motion is whether there is a "bare 'potential' or 'possibility'" that the Underlying Plaintiffs' bodily injuries were caused by a non-excluded substance, and the Court concludes that there is.

To be sure, silica "predominates" in the Underlying Actions in the sense that the exposures to and the injuries caused by non-excluded substances are uniformly alleged in combination with silica.  For instance, Mr. Quiroz alleges that as a result of his exposure to Cambria's stone products, "silica, metals *and* other toxins" entered his body and caused him to suffer from "silicosis and related medical conditions."  ECF 79-2 ¶ 1306 (emphasis added).  Mr. Quiroz also alleges that "[e]ach toxin, including silica *and* metals, that entered [Mr. Quiroz's] body was a substantial factor in bringing about . . . [Mr. Quiroz's] silicosis and his related consequential injuries."  *Id.* ¶ 1325 (emphasis added).  Reading these allegations in isolation, it would be plausible to conclude that silica contributed, at least in part, to each of the Underlying Plaintiffs' injuries, which would bring the injuries into the scope of the broadly phrased Silica Exclusion.

But upon closer examination of the Underlying Actions and the applicable law, the Court cannot ignore allegations appearing elsewhere in the complaint: that Mr. Quiroz developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and that at least some of those conditions can be independently caused by metals and VOCs.  ECF 79-2 ¶¶ 96–97, 112.  Such allegations, in tandem with the allegation that Mr. Quiroz is ignorant of the identity "of those hazardous substances . . . that caused his lung disease,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

"suggest a claim potentially covered by the [Policies]," and thus trigger a duty to defend. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005).   To the extent that the allegations in the Underlying Actions contradict each other or create any ambiguity as to the cause of the Underlying Plaintiffs' injuries, any such ambiguity or doubt must be resolved in Cambria's favor. *James River Ins. Co. v. SureFire, LLC*, No. 8:24-CV-01556-JVS-KES, 2025 WL 1287891, at *6 (C.D. Cal. Mar. 6, 2025) ("Any ambiguity in the complaint or doubt as to whether the facts give rise to a duty to defend must be resolved in favor of the insured." (citing *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1270 (9th Cir. 2010))).

Moreover, insofar as the Underlying Actions can be interpreted to allege that excluded and non-excluded causes *both* contributed to an Underlying Plaintiffs' injuries, such allegations would not eliminate the duty to defend, even under the broad language of the Silica Exclusion, pursuant to California's concurrent cause doctrine.   In *State Farm Mutual Automobile Insurance Co. v. Partridge*, 10 Cal. 3d 94 (1973), the California Supreme Court held that where a "homeowner's policy excluded injuries 'arising out of the use of' an automobile, such exclusion does not preclude coverage when an accident results from the concurrence of a non-auto-related cause and an auto-related cause."   *Id.* at 97.   The Court further held that where a non-excluded "risk is a proximate cause of an injury, liability attaches to the insured, and coverage for such liability should naturally follow."   *Id.*   The Court went on to explain that "[c]overage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury."   *Id.*

*Partridge* therefore instructs that, because silica and non-silica substances are each alleged to be substantial factors in causing the Underlying Plaintiff's injuries, the Silica Exclusion does not defeat coverage.   In a subsequent case, the California Supreme Court held that "tort law (substantial factor) causation is sufficient to create coverage *under a liability policy* when covered and excluded acts or events have concurred in causing injury or property damage."   *California v. Allstate Ins. Co.*, 45 Cal. 4th 1008, 1036 (2009).   In *Allstate*, the Court considered whether the insurer was liable for property damage, some of which was caused by covered, accidental pollutant discharges, and some of which was caused by excluded, nonaccidental pollutant discharges.   *Id.* at 1030.   The exclusion in *Allstate* included the same broad "arising out of" language appearing in the Silica Exclusion here.   *Id.* at 1016.   And the Court concluded that the fact "that an excluded cause of property damage[] also contributed to the contamination is insufficient to defeat *Partridge*'s holding that liability coverage exists 'whenever an insured risk constitutes a proximate cause of an accident, even if an excluded risk is a concurrent proximate cause.'"   *Id.* at 1032 (quoting *Partridge*, 10 Cal. 3d at 105).

*Partridge* and *Allstate* together compel the conclusion that where two substances—one excluded and the other covered—are each alleged to be a substantial factor in causing the underlying plaintiff's injuries, the broad "arising out of" language in the exclusion cannot be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

applied to defeat coverage. A different judge in this district recently applied *Partridge* to a materially similar dispute to reach the same conclusion. *Sompo America Insurance Company v. LX Hausys America, Inc.*, No. CV 25-2832-JFW(MAAx), 2025 WL 4061607, at *4 (C.D. Cal. Dec. 22, 2025). The Court finds the reasoning in *Sompo* persuasive here and similarly concludes that the Insurers "cannot avoid [their] duty to defend where an insured risk and excluded risk are alleged to constitute concurrent proximate causes of the underlying plaintiffs' bodily injuries." *Id.*

Drawing all reasonable inferences in Cambria's favor, as the Court must do in resolving the Insurers' Motion, the Court concludes that with respect to the policies issued by Regent Insurance, General Casualty, Zurich, Great American, and Navigators, Cambria has demonstrated the existence of a potential for coverage—*i.e.*, the existence of injuries in the Underlying Actions that would not fall within the scope of the Silica Exclusions. Those Insurers are therefore not entitled to judgment on the pleadings that it owes no duty to defend based on the Silica Exclusion.

### 2. *The Phoenix Silica Exclusion and Travelers Silica Exclusion I*

Unlike the Silica Exclusion discussed above, which bars injuries arising in whole or in part from silica or silica-related dust, the Phoenix Silica Exclusion and the Travelers Silica Exclusion I contain broader language that bar coverage for bodily injury:

> arising out of or in any way related to the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of silica or products or substances containing silica.

ECF 80-2 at 195; ECF 80-5 at 43.

The inclusion of the language "products . . . containing silica" and "silica products" is significant. The narrower exclusions discussed above, which do not contain this language, concern the specific substance that caused the Underlying Plaintiffs' injuries, and because the Underlying Actions can be fairly read as alleging that non-silica substances were the partial or sole cause of those injuries, the Insurers cannot avoid a duty to defend based on those exclusions. By contrast, these exclusions speak not only to the substances that cause injuries, but rather to whether the injuries were caused by any product that merely contains silica. The Underlying Plaintiffs allege that "[a]ll stone products contain crystalline silica in varying concentration." ECF 79-2 ¶ 93. And the Underlying Plaintiffs further allege that exposure to all toxic substances, including both silica and non-silica toxins, was the result of their work with "inherently hazardous stone products." *Id.* ¶ 111. Stated differently, although it is reasonable to infer that the Underlying Plaintiffs allege substances other than silica actually caused their injuries, the only fair reading of these allegations is that those injuries were all caused by *products* that, at the very

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

least, contained silica. A comparison of these exclusions and the Underlying Actions would therefore indicate that coverage is precluded under the broad language of the exclusion.

Cambria argues, however, that this interpretation would effectively "strip[]" Cambria "of the value of its insurance." ECF 86 at 19. In its opposition to Travelers' Memorandum, Cambria points to the "Products-Completed Operations Hazard" provisions of the Travelers' policies, which set forth insurance limits for "all 'bodily injury' . . . . arising out of 'your product,'" which is defined as "[a]ny . . . products . . . sold, handled, distributed or disposed of by [Cambria].'" ECF 80-2 at 156–57. Cambria argues that it is in the business of manufacturing and selling stone slabs, and these policies "clearly created the reasonable expectation that Cambria would have $36 million in primary coverage limits for bodily-injury claims arising out of" its stone products. ECF 87 at 9. In essence, Cambria argues that applying the silica exclusion to preclude coverage would essentially render the products-completed operations coverage "illusory" because all of Cambria's quartz products contain silica.

Travelers argues that Cambria cannot invoke the illusory coverage doctrine because in order for an exclusion to render a policy "'illusory,' the exclusion must result in a complete lack of any policy coverage." *Secard Pools v. Kinsale Ins. Co.*, 318 F. Supp. 3d 1147, 1153 (C.D. Cal. 2017). Travelers argues that Cambria's suggestion of illusory coverage "ignores any number of potentially covered risks that have absolutely nothing to do with harm caused by the silica in its products"—for example, injuries that might be sustained as a result of installation, breaking, cracking, chipping, falling, or other product defects. ECF 101 at 9–10. But this argument merely highlights the breadth—and potentially illusory nature—of Travelers' exclusion, because under the purportedly "unambiguous" terms of the exclusion, the scenarios Travelers identifies *would* be excluded from coverage, because those injuries would arise from the "handling" or "contact with" products containing silica. That the harm is not caused by the "silica *in* its products" would not be relevant under the terms of the exclusion. Travelers' own suggestion that the existence of coverage turns on whether the harm is caused by silica *in* the products, rather than on whether the harm is caused by any product merely containing silica, demonstrates to the Court that there is a potential ambiguity in the scope of these relevant exclusions. Cambria's objectively reasonable expectations are therefore relevant in resolving that potential ambiguity, and Cambria has a reasonable expectation that "an insurer would not issue a policy providing no coverage or so severely limiting coverage as to render it illusory." *Se Sec. Serv. Fed. Credit Union v. First Am. Title Co.*, No. CV 10-04824 SJO VBKX, 2012 WL 5954815, at *11 (C.D. Cal. Jan. 27, 2012). The Court cannot resolve this ambiguity or determine whether these exclusions render the policies illusory in the instant Motion, because those issues turn on facts outside the pleadings—for instance, Travelers argues that the coverage it provided "goes beyond the specific product at issue," ECF 101 at 10, but facts concerning the types of products Cambria obtained coverage for and whether all of those products contain silica are not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|----------|------------------------|------|----------------|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

properly before the Court.

For these reasons, the Court concludes that, at the present stage, Cambria has demonstrated there is potential for coverage under the Phoenix Silica Exclusion and Travelers Silica Exclusion I. *See Braden Partners, LP v. Twin City Fire Ins. Co.*, No. 14–CV–01689–JST, 2014 WL 7739396 (N.D. Cal. Oct. 17, 2014) (denying insurer's motion to dismiss claim for declaratory relief regarding duty to defend based on conclusion that insurer's reading of exclusion would render coverage illusory under policy).

### 3.    *The Travelers Silica Exclusions II and III*

The Travelers Property Silica Exclusion II and III appear in the umbrella policies issued by Travelers Property in 2016, 2017, 2022, 2023, and 2024.   They are substantially similar in that they both exclude from coverage: (1) injuries arising from silica or silica-related dust, and (2) injuries arising from other substances that are part of any claim or suit that also alleges any injuries arising from silica or silica-related dust.

There can be no doubt that the Underlying Plaintiffs allege injuries arising from silica or silica-related dust.  *See generally* ECF 79-2.  As the Court explained above, the Underlying Plaintiffs also allege injuries arising from toxic substances other than silica, such as metals or VOCs.   The exact nature and cause of any Underlying Plaintiff's injuries remain subject to factual development and litigation.   But the Travelers Property Silica Exclusions II and III exclude coverage based on what is *alleged*—all of the injuries caused by non-silica substances that give rise to potential for coverage under the exclusions discussed in Section III.C.1. above (*i.e.*, injuries caused by VOCs or metals) are part of the same Underlying Actions (a "suit") that allege injuries arising from silica.   Because every Underlying Plaintiff alleges injuries caused by toxic substances *and* by silica in a single action, these broader exclusions, which extend to any "claim or suit" alleging injuries arising from silica, bar coverage for the Underlying Actions.   Cambria's opposition to Travelers' memorandum does not substantively address these specific exclusions or explain how they would not apply to the Underlying Actions.  *See* ECF 87.

Moreover, the policies issued by National Surety in 2016 and 2017 identify the Travelers Property policies as the "first underlying insurance."   ECF 78-2 at 7.   The National Surety policies further state where damages are barred by the underlying insurances, they are similarly barred under the National Surety policies.  For the reasons explained, the Travelers Property policies containing the Travelers Silica Exclusions II and III bar coverage for the Underlying Lawsuits.   And because Travelers Property, the "underlying insurance" identified in the National

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

Surety policies, does not cover the Underlying Actions, neither does National Surety.[1]

## A.    Duty to Indemnify

"Where there is a duty to defend, there *may be* a duty to indemnify." *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal. 4th 945, 958 (2001). "The duty to indemnify arises after a judgment has been entered against the insured on a theory which is in fact, rather than merely potentially, covered by the policy." *Oruna v. Burlington Ins. Co.*, No. 222CV03425SPGGJSX, 2023 WL 5667539, at *10 (C.D. Cal. June 6, 2023) (citing *Lloyd's*, 24 Cal. 4th at 958). The Court therefore denies the Insurers' Motion as unripe to the extent that it concerns its duty to indemnify Cambria. However, because the Court concludes that coverage is unavailable under the Travelers Silica Exclusions II and III and under the National Surety policies, it **GRANTS** the Motion to the extent it concerns the Insurers' duty to indemnify under those policies.

To be clear, the Court's denial of the Insurers' Motion is not a conclusive determination that coverage under the Policies has been established. Rather, the outcome reached by the Court is based upon its conclusion that, at the present stage, the injuries alleged in the Underlying Actions are potentially covered under the Policies. In any given Underlying Action, if it is determined that the plaintiff's injuries were in fact caused by substances that fall within the Silica Exclusion or Pollution Exclusion, the Insurers may at that point be able to show that "no claim can in fact be covered," and the duty to defend would be extinguished. *Buss*, 16 Cal. 4th at 46.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Judgment on the Pleadings [76] is **GRANTED in part** and **DENIED in part**. The Court **ORDERS** as follows:

1. The Motion is **DENIED** with respect to the primary and excess policies issued by Regent, Zurich, Great American, General Casualty, Navigators, and Phoenix.

2. The Motion is **DENIED** with respect to the three umbrella policies issued by Travelers Property bearing policy numbers: (1) YSM-CUP-7C969720-TIL-13; (2) YSM-CUP-7C969720-TIL-14; and (3) YSM-CUP-7C9697720-TIL-15.

3. The Motion is **GRANTED** with respect to the five umbrella policies issued by Travelers Property bearing policy numbers: (1) ZUP-21N68052-16-NF; (2) ZUP-21N68052-17-NF;

---

[1] The Court therefore does not reach National Surety's arguments concerning exhaustion.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04142-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Company et al. v. Cambria Enterprises et al.* | | |

(3) CUP- 6T662984-22-NF; (4) CUP- 6T662984-23-NF; and (5) CUP- 6T662984-24-NF.

4. The Motion is **GRANTED** with respect to the excess policies issued by National Surety.

**IT IS SO ORDERED.**

_____ : _____

Initials of Deputy Clerk    mku